**HANOVER INSURANCE COMPANY, Appellant,**

v.

**Robert J. BLINCOE, Appellee.**

Court of Appeals of Kentucky.

Nov. 10, 1978.

George R. Carter, William P. Swain, Thomas H. Watson, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Edward F. Rectenwald, Louisville, for appellee.

Before HOWERTON, REYNOLDS and WILHOIT, JJ.

WILHOIT, Judge.

Hanover Insurance Company appeals from a judgment of the Jefferson Circuit Court entered on a jury verdict awarding the appellee, Robert J. Blincoe, $10,000.00 for pain and suffering under the uninsured motorist provisions of his automobile insurance policy. We affirm.

Mr. Blincoe was injured in a collision between his automobile and another automobile being negligently operated by an uninsured motorist. Blincoe was insured by Hanover under a policy providing both "no-fault" and uninsured motorist coverage. The basic reparation benefits due him under the no-fault coverage were paid by the insurance company, but later Blincoe brought this action against the uninsured tortfeasor and Hanover for $10,000.00 claimed due for pain and suffering. He asserted that Hanover was liable to him because of his uninsured motorist coverage for the amount of any verdict he should receive against the tortfeasor. The insurance company disclaimed any liability unless its insured could first establish that he met one of the "threshold" requirements set out in KRS 304.39–060(2)(b). The trial court ruled that the threshold requirements were inapplicable because the tortfeasor was an uninsured motorist. A verdict was rendered by the jury in favor of Blincoe for the full amount of his claim, and judgment was entered against the uninsured motorist and Hanover. From this judgment Hanover appeals.

■ The first question to be answered is whether the trial court was correct in ruling that the threshold requirements do not apply in this case.

KRS 304.39–060(2)(a) abolishes tort liability for damages because of bodily injury to the extent that the basic reparation benefits provided for in the Motor Vehicle Reparations Act are payable under any insurance policy or other statutory method of security. No specific mention is made in this subsection concerning the abolition or preservation of the tort liability of an uninsured motorist for pain and suffering. However, it appears from the wording of this section that an uninsured motorist would not be subject to a tort claim for loss [1] by an injured party to the extent that basic reparation benefits are payable to the injured party under an insurance policy, as here, or other security. Nothing in this subsection precludes recovery in tort for pain and suffering against uninsured motorist.

KRS 304.39–060(2)(b) provides that recovery in tort for damages due to pain and suffering is permitted only if one of its enumerated threshold requirements is met; however, this limitation is specifically applied only to actions in tort brought against "the owner, registrant, operator or occupant of a motor vehicle with respect to which *security has been provided as required in this subtitle.*" (Emphasis added.) The tortfeasor here had neither insurance nor other security as required by the Act. The plain wording of this subsection indicates that its limitations do not apply to anyone other than a motorist who has provided statutory security.

The insurance company argues, nevertheless, that the legislative intent to apply the threshold requirements to a claim for pain and suffering against an uninsured motorist becomes evident if one considers the stated purpose of the Motor Vehicle Reparations Act to reduce litigation and considers sections of the Act in addition to those we have discussed. The Act has a number of stated purposes including not only that to reduce litigation but the equally important purpose to require motorists to obtain insurance or other security. KRS 304.39–010 and 304.39–100. While the retention of tort liability in a case such as that before us might go somewhat contrary to the purpose of reducing litigation, it could also be

_____
1. See KRS 304.39–020(5) which defines "loss" in the sense used here.

viewed as further inducement for motorists to obtain insurance. In short, as an expression of legislative intent on the question with which we are now confronted, the stated purposes of the Act are at best ambiguous. The other provisions cited by Hanover, KRS 304.39–060(7), KRS 304.39–060(4), and KRS 304.39–310(2), seem equally ambiguous as indicating legislative intent on this question. Guided by the principles that "plain words are easiest understood" and that the intention of the Legislature is best ascertained from the words employed, *Gateway Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247 (1962); *Kentucky Association of Chiropractors, Inc. v. Jefferson County Medical Society,* Ky., 549 S.W.2d 817 (1977); and considering the plain words used in KRS 304.39–060(2)(a) and (2)(b), we believe the ruling of the trial court was correct.

■ The insurance company also maintains that the amount of the verdict was so excessive as to require reversal under the "first blush rule." Blincoe's principal injury was a laceration to his right knee. As a result of this injury he was unable to work and was on crutches for three and one-half to four weeks. His physician testified that the laceration was confined to the skin and underlying tissue, not affecting the joint or muscles, but that it was a big laceration requiring 25 or 30 sutures. Blincoe, who was 24 years old at the time of trial, testified that after the collision his kneecap was "hanging out of my pants" and that he was experiencing great pain, but was initially given no medication for the pain until the nature of his head injuries could be determined. He stated that his injured kneecap was no longer in its proper place and that after a long day at work, or after lifting a lot of weight or using his knee a lot, it continues to ache and "gets swelling and redness." This testimony was given over two years after the accident. Both of Blincoe's legs were exhibited to the jury so it could see his scar and the position of the injured kneecap in relation to his other kneecap. No medical testimony was presented by the insurance company. The jury was instructed on both past and future pain and suffering.

The amount of the verdict was certainly generous but not so patently unreasonable or so completely in disregard of the evidence and the permissible inferences that could be drawn from it by impartial people that we should substitute our evaluation for that made by the jury. *Elmore v. Speicher,* Ky., 481 S.W.2d 673 (1972).

The judgment of the trial court is affirmed.

All concur.