BABBITT v EMPLOYERS INSURANCE OF WAUSAU

Docket No. 69375. Submitted December 6, 1983, at Grand Rapids.—
Decided May 18, 1984. Leave to appeal denied, 419 Mich ___.

Bernard C. Babbitt was injured while, within the scope and course of his employment, he was unloading one of his employer's vehicles. Employers Insurance of Wausau, the employer's no-fault and workers' compensation insurer, paid workers' compensation benefits to Babbitt, but refused his claim for no-fault benefits. Babbitt filed suit against Employers Insurance in Kalamazoo Circuit Court seeking no-fault benefits. The court, Robert L. Borsos, J., granted defendant's motion for summary judgment. Babbitt appeals. *Held:*

The section of the no-fault act which provides that injured persons eligible for workers' compensation benefits are not eligible for no-fault benefits based on the same injuries does not unconstitutionally deny equal protection of the law to individuals who are eligible to receive workers' compensation benefits for injuries received while unloading a motor vehicle. That section of the no-fault act is rationally related to a legitimate governmental interest of reducing insurance costs.

Affirmed.

INSURANCE — NO-FAULT INSURANCE — WORKERS' COMPENSATION —
CONSTITUTIONAL LAW — EQUAL PROTECTION.

The section of the no-fault act which provides that injured persons eligible to receive workers' compensation benefits are not entitled to no-fault benefits for the same injuries does not unconstitutionally deny equal protection of the law to individuals who are eligible to receive workers' compensation benefits for injuries received while unloading a motor vehicle; that

REFERENCES FOR POINTS IN HEADNOTE

7 Am Jur 2d, Automobile Insurance §§ 205 et seq., 368.

Validity and construction of no-fault insurance plans providing for reduction of benefits otherwise payable by amounts receivable from independent collateral sources. 10 ALR4th 996.

Risks within "loading and unloading" clause of motor vehicle liability insurance policy. 6 ALR4th 686.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

section of the no-fault act is rationally related to a legitimate governmental interest of reducing insurance costs (MCL 500.3106[2]; MSA 24.13106[2]).

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C.* (by *Franklin J. Chambers),* for plaintiff.

*Baxter & Hammond* (by *Elizabeth F. Rupprecht),* for defendant.

Before: MAHER, P.J., and R. B. BURNS and J. G. ROSKOPP,* JJ.

PER CURIAM. Plaintiff filed this action seeking no-fault benefits from defendant. Defendant then filed its motion for summary judgment, pursuant to GCR 1963, 117.2, subds (1), (3). Defendant's motion was granted by the trial court. Plaintiff appeals and we affirm.

The following facts are not in dispute. On February 2, 1982, plaintiff sustained personal injuries while, within the scope and course of his employment, he was unloading one of his employer's vehicles. Defendant, plaintiff's employer's no-fault insurer and workers' compensation insurer, paid workers' compensation benefits to plaintiff as a result of his accident, but refused to pay no-fault benefits.

In response to defendant's motion for summary judgment, based upon MCL 500.3106(2); MSA 24.13106(2), plaintiff stipulated that he was injured while unloading a motor vehicle during the course and scope of his employment under circumstances entitling him to workers' compensation. The only defense to defendant's motion raised by plaintiff at the trial court level was his contention that the above-cited section of the no-fault act was uncon-

* Circuit judge, sitting on the Court of Appeals by assignment.

stitutional. This same argument is now raised before this Court.

Section 3106(2) of the no-fault act, MCL 500.3106(2); MSA 24.13106(2), provides:

"Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle."

Defendant contends that this section denies equal protection of the law to individuals who are eligible to receive workers' compensation for injuries received while unloading a motor vehicle.

The standard to be applied when this Court reviews such a challenge to a section of the no-fault act was described by the Michigan Supreme Court in *Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978), as follows:

"As the United States Supreme Court declared in *United States Dep't of Agriculture v Moreno,* 413 US 528, 533; 93 S Ct 2821; 37 L Ed 2d 782 (1973):

" 'Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest.' (Citations omitted.)

"In the application of these tests, it is axiomatic that the challenged legislative judgment is accorded a presumption of constitutionality. See *Michigan Canners v Agricultural Board, supra* [397 Mich 337; 245 NW2d 1 (1976)], pp 343-344. What this 'presumption of constitutionality' means, in terms of challenged police power

legislation, is that in the face of a due process or equal protection challenge, 'where the legislative judgment is drawn in question', a court's inquiry 'must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it'. *United States v Carolene Products Co,* 304 US 144, 154; 58 S Ct 778; 82 L Ed 1234 (1938)." (Footnote omitted.) See also *O'Donnell v State Farm Mutual Automobile Ins Co,* 404 Mich 524; 273 NW2d 829 (1979).

When creating statutory distinctions, the Legislature is not required to deal with every aspect of a particular problem at the same time nor are the classifications which it creates required to be the perfect alternative with respect to solving the problem which the Legislature was addressing. *O'Donnell, supra,* pp 542-543.

The basic goal of the personal injury provisions of the no-fault insurance system is to provide individuals injured in motor vehicle accidents "assured, adequate, and prompt reparation for certain economic losses". *Shavers, supra,* pp 578-579. The reduction of insurance premiums via legislation intended to control the costs of no-fault insurance has been held to be a legitimate governmental interest for equal protection purposes. *O'Donnell, supra,* p 549 (upholding a section requiring the set-off of duplicative governmental benefits but not requiring the offset of similar private benefits); *Shavers, supra,* pp 633-634 (upholding the exclusion of motorcycles from the no-fault system). In *Miller v Auto-Owners Ins Co,* 411 Mich 633, 641; 309 NW2d 544 (1981), the Michigan Supreme Court stated that the policy underlying MCL 500.3106(1); MSA 24.13106(1), the parking exclusion to the no-fault act, was to eliminate from no-fault coverage injuries where the involvement of the motor vehicle did not relate to its character as such. By thus limiting the coverage of no-fault

benefits, it appears that the Legislature was attempting to maintain cost controls over the system by limiting its scope.

We believe that § 3106(2) of the no-fault act is rationally related to a legitimate governmental interest of reducing insurance costs.

Affirmed.