AUTO CLUB INSURANCE ASSOCIATION v HILL

Docket No. 80966. Argued March 9, 1988 (Calendar No. 7). Decided October 7, 1988.

Gregory J. Hill was denied a claim by his insurer, Auto Club Insurance Association, for damages for noneconomic loss resulting from an automobile accident with an uninsured motorist. An arbitration panel awarded him money damages, including damages for noneconomic loss, finding that the threshold requirements for noneconomic loss under the no-fault act did not apply where an accident involved an uninsured motorist. The Auto Club brought an action in the Bay Circuit Court, seeking to vacate the award. The court, Eugene C. Penzien, J., affirmed the award. The Court of Appeals, Bronson and Gillespie, JJ. (Danhof, C.J., concurring), affirmed in an unpublished opinion per curiam (Docket No. 85828). The plaintiff appeals.

In an opinion by Justice Archer, joined by Chief Justice Riley and Justices Brickley, Boyle, and Griffin, the Supreme Court *held:*

Under the no-fault act, uninsured motorists are subject to tort liability for noneconomic loss only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. In this case, on the basis of the terms of the policy, the defendant is not entitled to compensation for noneconomic loss unless the loss meets the threshold requirements.

1. The no-fault act unambiguously provides that a person is subject to tort liability for noneconomic loss caused by the ownership, maintenance, or use of a motor vehicle, without regard to whether the person is insured, only where the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. Immunity for noneconomic loss below this threshold is not qualified by the possession of no-fault insurance. Recovery of noneconomic damages is not provided under the basic no-fault system for allocating the cost

References

Am Jur 2d, Automobile Insurance §§ 293 *et seq.,* 340 *et seq.*

Rights and liabilities under "uninsured motorists" coverage. 79 ALR2d 1252.

of accidents, and, thus, there is no logical basis for imposing greater liability for noneconomic damages because of an uninsured motorist's failure to fund the basic no-fault system.

2. In this case, the agreement provided that in the event of a collision with an uninsured motorist the defendant would be entitled to damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. Because an uninsured motorist is not liable for noneconomic loss unless the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement, the defendant is entitled to damages for noneconomic loss only if the injuries meet the threshold requirements. Thus, reversal of the judgment of the Court of Appeals and remand to the trial court for further proceedings is required.

Reversed and remanded.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated that tort liability for noneconomic loss less than the statutory threshold caused by the negligent use of an uninsured vehicle was not abolished. The provision of the no-fault act abolishing tort liability except for noneconomic loss greater than the statutory threshold does not apply to the owner of an uninsured motor vehicle involved in an accident. The no-fault act provides for abolition of tort liability only with respect to owners of insured vehicles; the exception continuing liability for noneconomic loss that exceeds the statutory threshold did not relieve an uninsured motorist of tort liability for noneconomic loss above or below the threshold.

INSURANCE — NO-FAULT — UNINSURED MOTORISTS — NONECONOMIC LOSS.

Uninsured motorists are subject to tort liability for noneconomic loss only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement (MCL 500.3135[1]; MSA 24.13135[1]).

*Zimostrad & Zimostrad, P.C.* (by *Stanley Zimostrad*), and *MacArthur, Cheatham, Acker & Smith, P.C.* (by *James G. Gross* and *Dwight R. Robinson*, of counsel), for the plaintiff.

*John C. Leaming* and *van Benschoten, Hurlburt & Tsiros, P.C.* (by *Harvey E. van Benschoten* and *Mandel I. Allweil*), for the defendant.

ARCHER, J. We granted leave to appeal to decide whether the threshold requirements of MCL 500.3135(1); MSA 24.13135(1)[1] apply when a motorist seeks benefits for noneconomic loss under the uninsured motorist provision of his no-fault policy. As a preliminary issue, we must determine the scope of tort liability of any uninsured motorist for noneconomic damages arising from an automobile collision.

We hold that uninsured motorists are subject to tort liability for noneconomic loss only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. MCL 500.3135; MSA 24.13135. On the basis of the insurance agreement between the parties at bar, we hold that the insured party is not entitled to damages for noneconomic loss unless his injuries meet the threshold set forth in § 3135. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

I

On April 9, 1981, the vehicle of defendant-appellee Gregory J. Hill was struck from the rear by an uninsured motorist. Mr. Hill filed a claim with his automobile insurance provider, plaintiff-appellant Auto Club Insurance Association (ACIA), for damages for noneconomic loss suffered as a result of the collision. This claim was pursuant to the fol-

[1] A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

lowing provision of his no-fault insurance contract
with ACIA:

> Uninsured Motorists Coverage.
> We will pay damages for bodily injury which an
> insured person is legally entitled to recover from
> the owner or operator of an uninsured motor
> vehicle. Bodily injury must be caused by accident
> and arise out of the ownership, operation, mainte-
> nance or use of the uninsured motor vehicle.

Mr. Hill's claim was denied. Pursuant to a
clause in the insurance policy, the dispute was
submitted for arbitration. The arbitration panel
awarded defendant $11,000, inclusive of damages
for noneconomic loss.

The ACIA petitioned the Circuit Court of the
Eighteenth Judicial Circuit to vacate the award of
the arbitration panel. The petition asserted that
the defendant had not alleged that he sustained
injuries that met the threshold requirements as
set forth in § 3135 for receipt of damages for
noneconomic loss.[2] Defendant Hill responded with

---

[2] In *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986), this
Court established a standard for determining whether a particular
injury constitutes a serious impairment of bodily function sufficient to
qualify for damages for noneconomic loss. A serious impairment of
body function under the no-fault act need not be an impairment of
the entire body function or of an important body function. The
threshold requires inquiry into what body function, if any, was
impaired because of injuries sustained in a motor vehicle accident,
and whether the impairment was serious. The focus of the inquiry is
not on the injuries, but on how the injuries affected a particular body
function. The Court stated:

> In determining whether the impairment was serious, several
> factors should be considered: the extent of the impairment, the
> particular body function impaired, the length of time the
> impairment lasted, the treatment required to correct the im-
> pairment, and any other relevant factors. An impairment need
> not be permanent to be serious. [*Id.* at 39-40.]

a petition to affirm the award. The latter petition was granted.

Plaintiff sought relief in the Court of Appeals. The Court of Appeals affirmed the finding of the circuit court.[3] Plaintiff-appellant's subsequent motion for rehearing was denied.

The ACIA now seeks relief in this Court. We granted leave to appeal limited to the issue whether the threshold requirements of MCL 500.3135(1); MSA 24.13135(1) apply when an insured motorist seeks benefits for noneconomic loss under the uninsured motorist provision of a no-fault policy.[4]

---

[3] *Auto Club Ins Ass'n v Hill,* unpublished opinion per curiam of the Court of Appeals, decided February 23, 1987 (Docket No. 85828). The issues considered by the Court of Appeals were essentially two-fold: (1) whether an uninsured motorist who does not contribute to the no-fault reparation system is entitled to the same tort immunity for below threshold injuries as a motorist who contributes to the no-fault reparation system, and (2) whether an arbitration decision may be vacated where a split of authority exists, precluding any substantial error of law apparent on the face of the award and where the result is legally sound.

There were two separate rationales. The per curiam opinion held that the limitations on liability contained in the no-fault act "are available only to those who have obtained the required no-fault insurance or other security." *Id.* at slip op, p 4. The Court reasoned that the insurer had stepped into the shoes of the uninsured motorist, thereby losing the protections of the act's limitations of liability. In a separate opinion, Judge DANHOF concurred in the judgment on the basis of the absence of clear error in the arbitration panel's decision. Judge DANHOF stated:

> [B]ecause there is a split of authority in our Court, I cannot say that the arbitrator made an error of law in following *Jones v DAIIE,* 124 Mich App 363; 335 NW2d 39 (1983), lv den 418 Mich 878 (1983) [holding that the threshold does not apply to uninsured motorists]. [*Id.* at slip op, p 5.]

In an apparent reconciliation of the two rationales for upholding the judgment of the court below, the per curiam opinion stated:

> Further, in so holding, we cannot find that the arbitrators made an error of law in following *Jones.* [*Id.* at slip op, p 4.]

[4] 429 Mich 858 (1987).

II

In order to give proper effect to § 3135,[5] this Court must enforce the clear and unambiguous language of the statute as drafted by the Legislature. In *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982), this Court stated:

> A basic rule of statutory construction is that where the Legislature uses certain and unambiguous language, the plain meaning of the statute must be followed. [Citations omitted.]

This Court may not impose its view of the best

[5] The relevant portions of the no-fault act are as follows:

(1) *A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.*

(2) *Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:*

(a) Intentionally caused harm to persons or property. Even though a person knows that harm to persons or property is substantially certain to be caused by his or her act or omission, the person does not cause or suffer such harm intentionally if he or she acts or refrains from acting for the purpose of averting injury to any person, including himself or herself, or for the purpose of averting damage to tangible property.

(b) *Damages for noneconomic loss as provided and limited in subsection (1).*

(c) Damages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 to 3110 in excess of the daily, monthly, and 3-year limitations contained in those sections. The party liable for damages is entitled to an exemption reducing his or her liability by the amount of taxes that would have been payable on account of income the injured person would have received if he or she had not been injured.

(d) Damages up to $400.00 to motor vehicles, to the extent that the damages are not covered by insurance. An action for damages pursuant to this subdivision shall be conducted in compliance with subsection (3). [MCL 500.3135; MSA 24.13135. Emphasis added.]

means to achieve a legislative purpose. In construing a statute, this Court must discern the intent of the Legislature in enacting the relevant provision. In doing so, we must first look to the language of the statute itself. *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). After considering the language and general scope of the act, we may determine legislative intent in light of the purpose it seeks to accomplish or the evil it seeks to remedy. *Longstreth v Gensel,* 423 Mich 675; 377 NW2d 804 (1985).

A

Section 3135(1) of the no-fault act provides:

> A person remains subject to tort liability for noneconomic loss . . . only if the injured person has suffered . . . serious impairment of body function . . . . [MCL 500.3135(1); MSA 24.13135(1).]

This section unambiguously governs liability for noneconomic loss, as distinguished from damages for economic loss which the no-fault insurer is liable to pay under §§ 3107 to 3110 of the act.[6] *Bradley v Mid-Century Ins Co,* 409 Mich 1, 62; 294 NW2d 141 (1980). The section also clearly specifies to whom its terms apply. The Legislature did not qualify the term "person" with any distinction

---

[6] The dissent cites the Uniform Motor Vehicle Accident Reparations Act as the model for the Michigan no-fault act. It is true that a different result than that reached today would be required pursuant to the provisions of the uniform act. It is also true that in drafting the Michigan no-fault act, our Legislature adopted the uniform act almost word for word. However, in a major departure, the Legislature added § 3135(1), which has no counterpart in the uniform act. In crafting this totally new provision to govern liability for noneconomic loss, the Legislature made clear its intention to create a threshold so that persons sustaining minor injuries would be compensated only for economic loss.

between persons insured and those who are uninsured.[7]

In contrast, § 3135(2) governs general tort liability. It applies only where the required no-fault coverage is in effect: "[T]ort liability arising from the ownership, maintenance or use [of a properly insured vehicle][8] is abolished" except under certain specific enumerated circumstances, including damages for noneconomic loss "as provided and limited in subsection (1)." MCL 500.3135(2)(b); MSA 24.13135(2)(b).

Defendant-appellee Hill contends that the exception to the abolition of tort liability in § 3135(2)(b) circumscribes the scope of tort immunity granted in § 3135(1). He argues that the reference to

---

[7] In dissent, Justice CAVANAGH argues that use of the word "remains" in § 3135(1) indicates that § 3135(2) excludes uninsured motorists from the benefit of the tort immunity granted in § 3135(1). He states:

> Only those—insureds—whose tort liability has been abolished under subsection (2) could have liability for noneconomic loss that "remains" under subsection (1). Persons whose tort liability has not been abolished—uninsureds—could not have liability that "remains." [*Post*, p 468.]

We disagree for several reasons. First, as stated in the text, the Legislature did not qualify its use of the term "person" when it designated those who would receive the benefit of the tort immunity granted in subsection (1). Second, the Legislature clearly stated that such a "'person' remains subject to tort liability for noneconomic loss . . . *only if* the injured person [meets the threshold]." Third, Justice CAVANAGH adopts an overly restrictive meaning of the term "remains." It is doubtful that the Legislature would use such a circuitous means of distinguishing between insured and uninsured motorists in subsection (1) when it could have easily and more clearly made this distinction by using a term or phrase other than "person," which is the broadest legal term of art possible for reference to those legal entities subject to damage suits for noneconomic loss caused by ownership, maintenance, or use of a motor vehicle. Fourth, subsection (1) precedes subsection (2) and is separate from the enumerated exceptions to the abolition of tort liability found in the latter provision. This indicates that subsection (1) is independent of subsection (2).

[8] As required by MCL 500.3101(3), (4); MSA 24.13101(3), (4).

§ 3135(1) in § 3135(2)(b) imposes a requirement of no-fault insurance for immunity from tort liability for below threshold noneconomic loss. We find no basis for adopting such a strained construction of the tort immunity granted in § 3135(1).

B

There is no qualification in the language of § 3135(1) referring to § 3135(2). Although the same general subject, i.e., tort liability, is treated in both subsections, they apply to two distinct types of liability. Subsection (1) governs immunity from tort liability for noneconomic loss. Subsection (2) abolishes general tort liability with several enumerated exceptions.

The reference in § 3135(2)(b) to § 3135(1) does not change the meaning of § 3135(1) itself. That reference limits the subsection 2(b) exception from the abolition of tort liability for noneconomic loss to above-the-threshold noneconomic loss. Thus, the reference to § 3135(1) merely obviates the need to enumerate the circumstances under which tort liability for noneconomic loss is excepted from the general abolition of tort liability contained in § 3135(2). In other words, if not for the reference to § 3135(1) in § 3135(2)(b), the latter subsection would read: "damages for noneconomic loss, if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

If the Legislature had intended to qualify the tort immunity granted in § 3135(1) by requiring proper no-fault insurance,[9] it could have expressly done so as it did with respect to the tort immunity granted in § 3135(2).

_____

[9] See n 8.

C

Our construction of § 3135 is consistent with the policies and legislative purpose underpinning its promulgation.

The basic goal of the personal injury provisions of the no-fault insurance act is to provide individuals injured in motor vehicle accidents assured, adequate and prompt reparation for certain economic losses. *Babbitt v Employers Ins of Wausau*, 136 Mich App 198; 355 NW2d 635 (1984). This Court has held, however, that the Legislature's purpose in establishing the alternative criteria of death, permanent serious disfigurement or serious impairment of body function as prerequisites for collection of noneconomic damages, "was simply to weed out from the tort system claims for injuries less severe than the criteria." *Byer v Smith,* 419 Mich 541, 546; 357 NW2d 644 (1984). The Legislature intended to bar "any recovery whatsoever for noneconomic loss unless the injury is serious and [to relieve] the courts of the burden of litigation where the injury is not serious." *Id.* at 545.

III

In addition to its consistency with this Court's interpretation of legislative policy, we find direct support in case law for our construction of § 3135.

In *Bradley v Mid-Century Ins Co, supra,* the Court resolved a series of companion cases involving certain contractual limitations in uninsured motorist endorsements of automobile insurance policies. In parts II and III of the *Bradley* opinion, the Court discussed the relationship between uninsured motorist coverage and first-party benefits under the no-fault act.

A

In part II of *Bradley,* the Court discussed and decided whether uninsured motorist coverage under more than one policy could be stacked to provide recovery for damages sustained in an accident which occurred after the enactment of the no-fault act and the simultaneous repeal of the uninsured motorist amendment of the Insurance Code, MCL 500.3010; MSA 24.13010. *Bradley, supra* at 46-60. The plaintiff in part II, Gary Davidson, argued that "antistacking provisions" contained in his automobile insurance policy were violative of public policy. The Court held that the clauses at issue were enforceable. *Id.* at 54.

In discussing the purposes and policy involved in promulgation by the Legislature of the no-fault insurance act, the Court made several observations relevant to resolution of the issue at bar. The Court analyzed the purpose of uninsured motorist coverage before and after the passage of the no-fault act. Prior to promulgation of the act, uninsured motorist coverage was designed to protect the integrity of the Motor Vehicle Accident Claims Fund. *Id.* at 52. Under the no-fault system, however, uninsured motorist coverage is a substitute for residual liability insurance. The Court stated:

> [U]ninsured motorist coverage . . . provides some compensation in cases where the victim has suffered severe (above-the-threshold) injuries and there is no residual liability coverage to provide compensation for pain and suffering and excess economic loss.
>
> * * *
>
> We are persuaded that the Legislature repealed the uninsured motorist amendment not because it assumed there would be no uninsured motorists, but because after the passage of no-fault a person

injured by an uninsured motorist had a source of
recovery for all damages except pain and suffering
and excess economic loss.

\*   \*   \*

True, no-fault benefits may be insufficient to
fully compensate one injured by a negligent unin-
sured motorist. But no accident victim is permit-
ted, under the no-fault act, to recover for below
threshold pain and suffering . . . . [*Id.* at 52-54.]

Thus, in part II of *Bradley,* this Court distin-
guished between loss compensable by the basic no-
fault benefits, i.e., economic loss, and damages for
pain and suffering and excess economic loss, com-
pensable in cases of "severe (above-the-threshold)
injuries."

B

In part III of its opinion, the *Bradley* Court
addressed the question whether an insurer could
offset first-party benefits paid under the no-fault
act from the policy limits of uninsured motorist
protection without regard to the total damages
that would be payable by the uninsured motorist
or the nature of those damages, i.e., economic or
noneconomic. This Court reiterated its view that
uninsured motorist coverage under the no-fault act
is a substitute for residual liability insurance:

Under the no-fault motor vehicle liability act an
insured may collect from his insurer for work loss
and medical expenses without regard to fault. He
may sue the negligent tortfeasor for excess eco-
nomic loss and, if the threshold of injury is met,
for noneconomic loss. The statute requires that
motorists carry residual liability insurance in addi-
tion to no-fault insurance to provide a source of
recovery to persons severely injured as a result of
driver negligence. *If a motorist is uninsured he*

*may be sued for all economic loss as well as above-
threshold non-economic loss.*

A purpose of the no-fault act is to provide a
contractual right of action against one's own in-
surer for wage loss and medical expenses arising
from a motor vehicle accident. *A tort action for
non-economic and excess economic loss was pre-
served in cases of severe loss.* The Legislature has
thus divided an injured person's loss into two
categories—loss for which the no-fault insurer is
liable and loss for which the tortfeasor is liable.
No-fault insurance provides security for the first
type; uninsured motorist coverage, which presup-
poses that the insured is entitled to recovery un-
der the tort system, provides security for the sec-
ond type—it is offered to protect against being left
with a worthless claim against an uninsured mo-
torist. [*Id.* at 61-62. Emphasis added.]

Because of this distinction between economic
losses compensable under basic no-fault coverage
and those losses compensable pursuant to an unin-
sured motorist endorsement, the Court held that
the set-off clause could not be enforced in the
manner that the insurer sought:

In providing insurance against the uninsured
motorist, the insurer promises the insured that his
right of action for *greater than threshold* injuries
will not be worthless if the tortfeasor turns out to
be uninsured.

If the tortfeasor is insured or otherwise collecti-
ble, the insurer paying no-fault benefits has a
statutory right to reimbursement for benefits
theretofore paid by it only out of a recovery for
those economic losses. So, too, if the insurer con-
tracts to make good for an uninsured motorist—
*coverage complementary and supplementary to
the basic no-fault policy and standing in the place
of third-party residual liability insurance*—the in-
surer and the insured should have corresponding
rights relative to amounts recoverable under an

uninsured motorist endorsement; the insurer should be permitted a set-off only to the extent a recovery duplicates benefits it has already paid.

*The insured is entitled to payment under the "all sums recoverable" language of the uninsured motorist endorsement for all economic and above the threshold non-economic loss for which an uninsured motorist would be liable.* [*Id.* at 63-64. Emphasis added.]

Because the set-off clause failed to note the distinction between types of damages, the Court found the clause to be either defectively ambiguous or inconsistent with the reasonable expectations of the insured. *Id.* at 60-61.

Defendant-appellee argues that the *Bradley* Court's description of the nature and scope of uninsured motorist coverage is mere dicta. We disagree. This Court's conclusion that the set-off clause was unenforceable was squarely on the basis of the differences between first-party no-fault benefits and compensation for noneconomic losses pursuant to uninsured motorist coverage. We found that the insurer's interpretation of the policy would nullify the effect of uninsured motorist coverage in precisely those situations in which it was intended to apply:

Unless voluntarily purchased uninsured motorist coverage provides meaningful protection for severe, above-threshold, injuries without regard to what the insurer is required to pay under the mandatory no-fault coverage, it serves no apparent purpose in the context of a no-fault statute mandating the payment of benefits. If the set-off were enforced in the manner the insurers seek, no-fault benefits paid would reduce uninsured motorist coverage dollar for dollar. As soon as the insurer has paid out $20,000 in no-fault benefits, there would be no recovery whatsoever under the uninsured motorist endorsement. [*Id.* at 64.]

We find this Court's interpretation of the nature and scope of uninsured motorist coverage in *Bradley* to be consistent with our interpretation of the extent of immunity from tort liability granted in § 3135(1) of the no-fault act.

C

Defendant-appellee asserts that in *Citizens Ins Co v Tuttle,* 411 Mich 536; 309 NW2d 174 (1981), the Court defined the scope of tort liability for noneconomic damages to include compensation for below-threshold injuries. In that case, Mr. Tuttle's cow, which was running loose on the highway, was involved in a collision with a tractor and trailer. Citizens Insurance Company brought an action in tort against Donald Tuttle to recover the cost of repairs paid to its insured for damages resulting from the collision. This Court was faced with the question whether tort liability arising out of conduct other than the ownership, maintenance or use of a motor vehicle was abolished by the no-fault act. We held that the tort liability abolished by the no-fault act is only such liability as arises out of the tortfeasor's ownership, maintenance or use of a motor vehicle. This does not include tort liability which arises out of other conduct, such as the negligent keeping of cattle. *Id.* at 546-547.

Defendant-appellee supports his argument on the basis of the following language in *Tuttle:*

Moreover, subsection (2) abolishes tort liability arising from the ownership, maintenance or use *only of vehicles for which the required no-fault insurance or other security has been obtained.* The policy apparently expressed in so conditioning the abolition of tort liability upon the obtaining of no-fault coverage is that *a person is to be relieved of tort liability only upon participating, through the*

*payment of premiums, in a system for spreading
the costs of compensating vehicular injuries with-
out regard to fault.* To extend the abolition of tort
liability to non-motorist tortfeasors would be to
incorporate into the no-fault system the costs of
providing personal protection insurance benefits to
motorists, passengers and pedestrians injured by
non-motorist tortfeasors without incorporating off-
setting premiums from non-motorist tortfeasors,
since non-motorist tortfeasors are not required to
purchase no-fault insurance with respect to their
conduct as non-motorists.

. . . The non-motorist tortfeasor is the equiva-
lent of the uninsured motorist and should be
treated similarly. *Both are outside the basic no-
fault system of allocating the costs of accidents
and both remain subject to tort liability.* [*Id.* at
546-547. Emphasis added.]

Defendant-appellee asserts that the uninsured
motorist in this case has paid no premium and has
not supported the underlying no-fault act. He
argues that the ACIA, standing in the shoes of the
uninsured motorist, is therefore outside the basic
no-fault system and should remain subject to lia-
bility for damages without regard to the threshold
requirements of § 3135.

We find this argument to be unpersuasive. The
question before the Court in *Tuttle* involved the
liability of a nonmotorist tortfeasor. The Court
analogized the nonmotorist tortfeasor to an unin-
sured motorist who enjoys no tort immunity for
economic damages because he has not contributed
to the insurance premium pool which funds first-
party economic benefits. *Id.* at 546-547. We find
this rationale to be limited to liability for eco-
nomic damages.

The analogy in *Tuttle* was on the basis that
"[b]oth [the nonmotorist tortfeasor and the unin-

sured motorist] are outside the basic no-fault system of allocating the cost of accidents and both remain subject to tort liability." *Id.* This basis for withholding tort immunity for economic damages does not apply to noneconomic damages because recoveries for noneconomic damages are not provided by the basic no-fault system for allocating the cost of accidents. There is no logical basis for imposing greater liability for noneconomic damages upon a person because of his failure to fund the basic no-fault system, which pays for only economic damages.[10]

Indeed, in § 3102 of the act, the Legislature has provided penalties for those who own or operate motor vehicles without the required security. MCL 500.3102; MSA 24.13102. Also, the owner or registrant of an uninsured motor vehicle cannot collect first-party benefits if that motor vehicle is involved in an accident. MCL 500.3113(b); MSA 24.13113(b). This express provision of penalties for violation of the terms of the no-fault act indicates that the Legislature has expressed the extent to which it will punish violators. Without an express authorization for penalties in addition to those found in §§ 3102 and 3113 of the act, we decline to construe the statute in a manner that would further penalize uninsured motorist tortfeasors.

IV

The insurance agreement between the parties at bar provided that in the event of a collision with an uninsured motorist the defendant would be entitled to "damages for bodily injury which an insured person is legally entitled to recover from

---

[10] The dissent also cites *Citizens Ins Co v Tuttle*, albeit without explanation. *Post*, p 470. No attempt is made in the dissent to respond to the distinctions we find between this case and the circumstances in *Tuttle*.

the owner or operator of an uninsured motor vehicle." An uninsured motorist is not liable for noneconomic loss unless the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. Accordingly, we hold that the defendant in this case is not entitled to damages for noneconomic loss unless his injuries meet the threshold requirement.[11]

## CONCLUSION

We hold that, pursuant to MCL 500.3135(1); MSA 24.13135(1), uninsured motorists are subject to tort liability for noneconomic loss only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. Our review of the terms of the insurance agreement upon which the defendant's claim was based compels us to hold that he is not entitled to compensation for his noneconomic loss unless his loss meets the threshold requirement. We reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

RILEY, C.J., and BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred with ARCHER, J.

CAVANAGH, J. (*dissenting*). The no-fault automobile liability act abolishes tort liability respecting an insured vehicle except for noneconomic loss greater than the statutory threshold: death, serious impairment of body function, or permanent serious disfigurement.[1]

---

[11] Mr. Hill did not argue, in this Court or in the courts below, that his insurance agreement with the ACIA was defectively ambiguous for failing to explicitly exclude liability for damages for noneconomic loss unless the injury sustained were above the threshold requirements of § 3135.

[1] (1) A person remains subject to tort liability for noneconomic

The question presented is whether a person who suffers noneconomic loss less than the statutory threshold caused by the negligent use of an uninsured vehicle may recover under the uninsured motorist coverage of an automobile insurance policy.

The majority holds that the act abolishes tort liability for noneconomic loss below the statutory threshold without regard to whether the vehicle is insured. We would hold that tort liability is not abolished as to an uninsured vehicle and that the defendant may recover from his insurer under the uninsured motorist coverage.

Subsection (2) of § 3135 of the act, stating that tort liability is abolished as to an insured vehicle, and subsection (1), stating that an owner remains subject to tort liability for noneconomic loss "only" if a loss greater than the threshold has occurred,[2] should be read together and harmonized. Subsection (2) speaks specifically to the question whether an owner of an uninsured vehicle is relieved of tort liability, and states that he is not. That specific provision should and can be given effect by regarding the language of subsection (1) (providing that a person remains subject to tort liability for noneconomic loss only if a greater than threshold

---

loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

(2) Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect is abolished except as to:

*    *    *

(b) Damages for noneconomic loss as provided and limited in subsection (1). [MCL 500.3135(1), (2)(b); MSA 24.13135(1), (2)(b).]

[2] See n 5 of the majority opinion for the complete text.

injury has occurred) as applicable only where tort liability has been abolished as provided in subsection (2).

Only those—insureds—whose tort liability has been abolished under subsection (2) could have liability for noneconomic loss that "remains" under subsection (1). Persons whose tort liability has not been abolished—uninsureds—could not have liability that "remains." A person not within the intendment or scope of subsection (2) (abolishing tort liability) is not within the intendment or scope of subsection (1) (liability for noneconomic loss that remains); an uninsured is not within the intendment or scope of subsection (2) and hence is not within the intendment or scope of subsection (1).

The no-fault act, as this Court has observed,[3] is modeled on the Uniform Motor Vehicle Accident Reparations Act which expressly,[4] and on examination of the commentary[5] clearly, provides—more

---

[3] See *Citizens Ins Co v Tuttle,* 411 Mich 536, 546; 309 NW2d 174 (1981).

[4]  (a) Tort liability with respect to accidents occurring in this State and arising from the ownership, maintenance, or use of a motor vehicle is abolished except as to:

(1) liability of the owner of a motor vehicle involved in an accident if security covering the vehicle was not provided at the time of the accident;

* * *

(7) damages for noneconomic detriment in excess of [$5,000], but only if the accident causes death, significant permanent injury, serious permanent disfigurement, or more than 6 months of complete inability of the injured person to work in an occupation. "Complete inability of an injured person to work in an occupation" means inability to perform, even on a part-time basis, even some of the duties required by his occupation or, if unemployed at the time of injury, by any occupation for which the injured person was qualified. [Uniform Motor Vehicle Accident Reparations Act, 14 ULA 63, § 5.]

[5]  The rationale for denying the tort exemption to persons

clearly we agree than the Michigan act—that the provision of the act abolishing tort liability does not apply to the owner of an uninsured motor vehicle involved in an accident.

It may seem incongruous that an injured person who has uninsured motorist coverage may recover for below the threshold noneconomic loss when the driver of the other vehicle was at fault and the vehicle was uninsured, while no recovery below the threshold may be obtained if the other vehicle was insured. Such incongruity is the result of the language of the uninsured motorist rider to the injured person's automobile insurance and does not justify the majority's construction of the no-fault act to correct this possible incongruity in the underwriting of uninsured motorist coverage.[6]

failing to comply with the requirement of providing security (Section 7) is that such persons have not contributed to the payment of basic reparation benefits which are intended to replace much of existing tort liability. For example, the State is not empowered to require that the United States government post security for the payment of basic reparation benefits. The United States' obligation to pay the victims of accidents involving government motor vehicles is limited to paying "tort claims, in the same manner, and to the same extent as a private individual under like circumstances" (28 USC 2674). Under the provisions on security covering the vehicles (Section 7), the United States government may elect to provide security for its vehicles. If the United States provides security, it would be exempt from tort liability. But, under this paragraph, if it elected not to do so, it would continue to be liable in tort "to the same extent as a private individual" who had not complied with the security requirement. This paragraph retains tort liability only for the owner of the unsecured vehicle, since, under the provisions on security covering the vehicle, only the owner is required to furnish such security. The driver of an unsecured vehicle who is not the owner is not liable in tort under the tort action retained by this paragraph. The owner's vicarious liability under owner-consent statutes or principles of the law of agency is retained, however, as if the driver's tort liability had been retained as well. [Commissioners' Comment, 14 ULA 65-66, § 5(a)(1).]

[6] The Kentucky Court of Appeals has held that the § 5(a)(1) thresh-

Our attention has been directed by the parties to statements in *Bradley v Mid-Century Ins,* 409 Mich 1, 62; 294 NW2d 141 (1980), and *Citizens Ins Co v Tuttle,* 411 Mich 536, 546-547; 309 NW2d 174 (1981). Neither the statement in *Bradley* (tending to support the insurer) nor those in *Citizens* (tending to support the insured) were necessary to decision in those cases,[7] and did not decide the issue in the instant case, an issue of sufficient difficulty to have justified plenary consideration in the instant case by this Court.

We would affirm the decision of the Court of Appeals.

LEVIN, J., concurred with CAVANAGH, J.

---

old of the UMVARA does not bar an insured's action to recover under the uninsured motorist provision of an automobile policy for pain and suffering resulting from injuries sustained in a collision with an automobile negligently driven by an uninsured motorist. *Hanover Ins Co v Blincoe,* 573 SW2d 930 (Ky App, 1978).

The Supreme Court of North Dakota faced the same issue in *Steenson v General Casualty Co,* 397 NW2d 461, 462 (ND, 1986). The statute provided:

*Secured person exemption.*—

1. In any action against a secured person to recover damages because of accidental bodily injury arising out of the ownership or operation of a secured motor vehicle in this state, the secured person shall be exempt from liability to pay damages for:

a. Noneconomic loss unless the injury is a serious injury.

The court concluded:

There is nothing expressed in these statutes to suggest that recovery on the uninsured motorist coverage is limited by the threshold requirements of the separate no-fault statute. [*Id.,* p 463.]

7 Wisdom too often never comes, and so one ought not to reject it merely because it comes late. [*Henslee v Union Planters Nat'l Bank,* 335 US 595, 600; 69 S Ct 290; 93 L Ed 259 (1949) (dissent of Frankfurter, J.).]