# STATE OF MICHIGAN

# COURT OF APPEALS

CYNTHIA ADAM,

        Plaintiff-Appellant,

v

SUSAN LETRICE BELL and MINERVA
DANIELLE BELL,

        Defendants,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee.

FOR PUBLICATION
August 11, 2015
9:00 a.m.

No. 319778
Oakland Circuit Court
LC No. 2013-131683-NI

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition to defendant State Farm Mutual Automobile Insurance Company (State Farm) on the ground that plaintiff's claims were barred by res judicata. We reverse and remand for further proceedings.

This Court reviews de novo a decision to grant a motion for summary disposition. *Hines v Volkswagen of Am, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). When reviewing a motion for summary disposition under MCR 2.116(C)(7), this Court "considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 271; 792 NW2d 798 (2010). The question presented in this appeal, whether the doctrine of res judicata bars a claim, is a question of law we review de novo. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 417; 733 NW2d 755 (2007).

On July 3, 2011, plaintiff was injured when she was struck by a vehicle driven by Susan Bell and owned by Minerva Bell. In March 2012, plaintiff filed a lawsuit against State Farm for personal injury protection (PIP) benefits under the no-fault act. See MCL 500.3105 (insurer liability), and MCL 500.3107 (allowable expenses). That claim was settled on October 15, 2012,

-1-

with plaintiff signing a release of all claims for no-fault benefits "up to the date of [the] release . . . ." A stipulated order of dismissal with prejudice as to plaintiff's claims "for benefits up to 10-15-12 only" was entered on November 5, 2012.

On January 16, 2013, plaintiff filed a third-party complaint alleging negligence against Susan Bell, a claim of owner liability against Minerva Bell, and a claim of breach of contract against State Farm with respect to uninsured motorist (UM) benefits. State Farm filed a motion for summary disposition on April 5, 2013, asserting plaintiff's UM claim was barred by the doctrine of res judicata. The trial court heard the parties' arguments on this motion on July 24, 2013. The trial court ruled that plaintiff's UM "claim clearly could have been filed in the prior matter and was not, therefore, the claim is barred by res judicata." The court's order granting State Farm summary disposition was entered on August 22, 2013. Subsequently, on December 13, 2013, the trial entered a default judgment in plaintiff's favor against the Bell defendants in the amount of $250,000. This last order was a final order closing the case and permitting plaintiff to appeal by right the order granting State Farm summary disposition.

In Michigan, the doctrine of res judicata is applied broadly to bar "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). The doctrine is "employed to prevent multiple suits litigating the same cause of action." *Id*. Specifically, the doctrine of res judicata is a judicially created remedy that serves to relieve parties of the cost and aggravation of multiple lawsuits, conserve judicial resources, and to encourage reliance on adjudication by avoiding inconsistent decisions. *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999). Importantly, res judicata is intended to "promote fairness, not lighten the loads of the state court by precluding suits whenever possible." Moreover, res judicata will not be applied when to do so would subvert the intent of the Legislature. *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 630; 808 NW2d 471 (2010).

The doctrine of res judicata bars a subsequent action where "(1) the prior action was decided on the merits, (2) the prior action involved the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair*, 470 Mich at 121. In addition, the prior action must also have resulted in a final decision. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2006).

There is no dispute here that the prior action for PIP benefits involved the same parties and was decided on the merits. The action was dismissed with prejudice pursuant to a stipulated order. See *Limbach v Oakland Co Bd of Rd Comm'rs*, 226 Mich App 389, 395; 573 NW2d 336 (1997) (holding a voluntary dismissal with prejudice acts as an adjudication on the merits for purposes of res judicata). The only dispute remaining in this case is whether the two actions arose from the same transaction such that plaintiff in the exercise of reasonable diligence could have but did not raise this UM claim during the prior action; therefore, the claim should be res judicata. *Adair*, 470 Mich at 121.

Michigan's broad interpretation of the third element of the res judicata doctrine has been referred to as a "same transactional test," as distinguished from a "same evidence test." *Adair*, 470 Mich at 123-125. Under the same evidence test, the issue is whether the same evidence is

required to prove the claimed theory of relief. *Id*. Under the same transaction test, the facts must be viewed pragmatically, regardless of the number of variant legal theories that might support claims for relief. *Id*. The fact that differing claims may require different evidence might be relevant to deciding if the claims arise from the "same transaction," but it is not dispositive. *Id*. at 124-125. Rather, quoting 46 Am Jur 2d, Judgments 533, p 801, and adding emphasis, our Supreme Court has stated, "[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." *Adair*, 470 Mich at 125. Using this pragmatic approach, we conclude that although plaintiff's PIP claim and plaintiff's tort/UM contract claim both arise from the same automobile accident, the claims also have significant differences in the motivation and in the timing of asserting the claims, and they often do not form a convenient trial unit. Further, applying res judicata to the facts of this case would not promote fairness and would be inconsistent with the Legislature's intent expressed through the no-fault act. The no-fault act provides for the swift payment of no-fault PIP benefits. On the other hand, it severely restricts the right to bring third-party tort claims that would form the basis for a UM contract claim.

In reaching this conclusion we find instructive and persuasive *Miles v State Farm Mut Auto Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued May 6, 2014 (Docket No. 311699), which addressed the exact question presented in this case.[1] The facts of *Miles* are not identical but are very close to those in the present case. Miles was injured when struck by a motor vehicle in July 2008; he sued State Farm for PIP benefits under his mother's insurance policy as a resident relative. That suit was settled in April 2010 and dismissed in July 2010. Miles filed a new complaint in June 2010 for additional PIP benefits and also asserted that State Farm wrongfully refused to pay him uninsured motorist benefits. The trial court granted State Farm's motion for partial summary disposition, ruling that the UM claim could have been brought with the first PIP claim and was therefore barred by res judicata. We quote at length the majority opinion in *Miles*, which reversed the trial court, and we adopt its reasoning as our own:

> It is plain that both Miles' claim for PIP benefits and his claim for uninsured motorist benefits arise from the same accident and involve the same injuries and insurance policy. For that reason, there is a substantial overlap between the facts involved with both claims. But that being said, there are also significant differences between the two types of claims.
>
> A person injured in an accident arising from the ownership, operation, or maintenance of a motor vehicle as a motor vehicle is immediately entitled to PIP benefits without the need to prove fault. See MCL 500.3105(2); MCL 500.3107. The PIP benefits are designed to ensure that the injured person receives timely payment of benefits so that he or she may be properly cared for during recovery.

---

[1] "Although unpublished opinions of this Court are not binding precedent, MCR 7.215(C)(1); . . . they may, however, be considered instructive or persuasive." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010) (citation omitted).

*Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). Moreover, the injured person has a limited period within which to sue an insurer for wrongfully refusing to pay PIP benefits. See MCL 500.3145(1). Because an injured person is immediately entitled to PIP benefits without regard to fault, requires those benefits for his or her immediate needs, and may lose the benefits if he or she does not timely sue to recover when those benefits are wrongfully withheld, the injured person has a strong incentive to bring PIP claims immediately after an insurer denies the injured person's claim for PIP benefits.

In contrast to a claim for PIP benefits, in order to establish his or her right to uninsured motorist benefits, an injured person must—as provided in the insurance agreement—be able to prove fault: he or she must be able to establish that the uninsured motorist caused his or her injuries and would be liable in tort for the resulting damages. See *Auto Club Ins Ass'n v Hill*, 431 Mich 449, 465-466; 430 NW2d 636 (1988). Significantly, this means that the injured person must plead and be able to prove that he or she suffered a threshold injury. *Id*. at 466, citing MCL 500.3135(1). Except in accidents involving death or permanent serious disfigurement, an injured person will therefore be required to show that his or her injuries impaired an important body function that affects the injured person's general ability to lead his or her normal life in order to meet the threshold. MCL 500.3135(1) and (5). This in turn will often require proof of the nature and extent of the injured person's injuries, the injured person's prognosis over time, and proof that the injuries have had an adverse effect on the injured person's ability to lead his or her normal life. See *McCormick v Carrier*, 487 Mich 180, 200-209; 795 NW2d 517 (2010). Thus, while an injured person will likely have all the facts necessary to make a meaningful decision to pursue a PIP claim within a relatively short time after an accident, the same cannot be said for the injured person's ability to pursue a claim for uninsured motorist benefits. Finally, an injured person's claim for uninsured motorist benefits involves compensation for past and future pain and suffering and other economic and noneconomic losses rather than compensation for immediate expenses related to the injured person's care and recovery. See *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 408-410; 808 NW2d 240 (2010) (discussing the nature of the economic and noneconomic damages that are awarded in negligence actions). Consequently, a claim for PIP benefits differs fundamentally from a claim for uninsured motorist benefits both in the nature of the proofs and the motivation for the claim.

The record shows that within a short time of [the] accident State Farm took the position that Miles' medical ailments were not causally related to the accident at issue and denied his request for PIP benefits on that basis. Because Miles could assert a PIP claim without the need to prove fault and without having to establish the full extent of his injuries, he could assert his PIP claim within a short time of State Farm's decision to deny his claims. Indeed, because he required those benefits for his care and recovery, he had a powerful motivation to bring the claims as soon as practical. Further, in order to establish those claims,

he only had to present evidence that his claims arose from the accident and met the other criteria provided under MCL 500.3107.

Miles, however, could not establish his claim for uninsured motorist benefits without being able to prove that [the driver of the vehicle that struck him] would be liable in tort for his injuries and that he met the serious impairment threshold. Because his claim for uninsured motorist benefits required evidence to establish the nature and extent of his injuries and proof that the injury affected his ability to lead his normal life and the original dispute involved only whether Miles' injuries were causally related to the accident at issue, we conclude that it was not practical for Miles to bring his claim for uninsured motorist benefits in his original suit.

Because Miles' claim for uninsured motorist benefits was not one that could have been litigated during the time of his original lawsuit, his failure to bring his claim for uninsured motorist benefits did not implicate the doctrine of res judicata. *Adair*, 470 Mich at 125. [*Miles*, unpub op at 4-5.]

This conclusion is also supported by the fact that PIP claims have a base one-year limitations period unless the insurer receives written notice of injury within that time or the insurer has previously made a payment of PIP benefits for the injury, MCL 500.3145(1). Even then, the one-year-back rule limits recovery to allowable expenses incurred within the year preceding the filing of an action for benefits. *Id.*; *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 208; 815 NW2d 412 (2012); *Linden v Citizens Ins Co*, 308 Mich App 89, 95; 862 NW2d 438 (2014). This Court has opined that a contractual one-year limitation period for a UM claim was unreasonable because the insured (1) may not have a sufficient information about his own physical condition to warrant filing a claim within that timeframe, (2) may not know the insurance status of the at-fault driver, and, thus, "(3) the action may be barred before the loss can be ascertained." *Rory v Continental Ins Co*, 262 Mich App 679, 686; 687 NW2d 304 (2004), rev'd 473 Mich 457 (2005). Although *Rory* was reversed by our Supreme Court, the Office of Financial and Insurance Services (OFIS), found its reasoning "compelling," OFIS, Order No. 05-060-M (December 16, 2005), p 3.[2] Based on this reasoning, the statutory limits on claiming noneconomic damages under MCL 500.3135, and the Secretary of State's inability to confirm whether a person was insured on the day of an accident, the OFIS ruled under the authority of MCL 500.2236(5) that a limitation on UM claims of fewer than three years is unreasonable. *Id.*, p 4; see also *Ulrich v Farm Bureau Ins*, 288 Mich App 310, 312, 317-319; 792 NW2d 408 (2010). Under the reasoning of *Rory*, 262 Mich App 679, and OFIS, Order No. 05-060-M, we must conclude that a UM claim may not yet be ripe for litigation until after a PIP claim must be filed. Consequently, applying res judicata to essentially require mandatory joinder of a mere potential UM claim with a PIP claim would be inconsistent with the very divergent statutory

---

[2]  See  <http://www.michigan.gov/documents/Prohibition_Order_121605_145496_7.pdf> (accessed August 3, 2015).

treatment of these two very different types of no-fault claims. See e.g., *Bennett*, 289 Mich App at 630.

We reverse and remand for further proceedings. We do not retain jurisdiction. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio