# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH G. NICKOLA, Personal Representative
for the Estate of GEORGE and THELMA
NICKOLA,

       Plaintiff-Appellant,

v

MIC GENERAL INSURANCE COMPANY, d/b/a
GMAC INSURANCE,

       Defendant-Appellee.

FOR PUBLICATION
September 24, 2015
9:00 a.m.

No. 322565
Genesee Circuit Court
LC No. 05-081192-NI

Before: GADOLA, P.J., and JANSEN and BECKERING, JJ.

PER CURIAM.

      In this action against defendant, MIC General Insurance Company, d/b/a GMAC Insurance, concerning underinsured motorist benefits, plaintiff, Joseph G. Nickola, as personal representative of the estate of George and Thelma Nickola,[1] appeals the June 19, 2014 order denying plaintiff's request for attorney fees and interest.[2] We affirm in part and remand for further proceedings.

---

[1] George and Thelma were originally listed as plaintiffs in this action. However, during the pendency of this case, they passed away, requiring the appointment of plaintiff, their son, as personal representative. For ease of reference, we will refer to George and Thelma by name, and will use the term "plaintiff" to refer to Joseph G. Nickola, the personal representative.

[2] Although plaintiff's claim of appeal asserts that this appeal of the June 19, 2014 order is an appeal as of right, we do not agree. The order did not dispose of all the claims of the parties, see MCR 7.202(6) (describing final orders); notably, as discussed in more detail below, the order did not resolve plaintiff's request for entry of a judgment on the arbitration award. Moreover, because there is no judgment, the order appealed does not qualify as a postjudgment order awarding or denying attorney fees and costs under MCR 7.202(6)(a)(iv). However, in the interest of judicial economy, we exercise our discretion and treat the claim of appeal as an application for leave to appeal and grant the application. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

-1-

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

This case involves a protracted procedural history.  The matter arose out of a motor vehicle accident that occurred on April 13, 2004.  George and Thelma, who were insured by defendant, were injured[3] when an automobile driven by Roy Smith, who was insured by Progressive Insurance Company, struck their automobile.  The maximum available coverage on Smith's auto policy with Progressive was $20,000 per individual involved in an accident.  George and Thelma, with defendant's consent, settled the tort claim, with Progressive paying its client's policy limits on or about November 21, 2004.  Thereafter, they turned to defendant, their no-fault insurer, and sought underinsured motorist (UIM) benefits.  Defendant's policy with George and Thelma provided UIM coverage in the amount of $100,000 per person and $300,000 per accident; George and Thelma each sought $80,000, which represented the $100,000 policy limit minus the $20,000 already received from Progressive.

Defendant denied the claim for UIM coverage in February 2005, alleging that George and Thelma could not establish a threshold injury for noneconomic tort recovery under MCL 500.3135.  In response to this denial, George and Thelma sent defendant a written demand for arbitration of their UIM claim, consistent with their auto policy.  The UIM coverage provision in their policy with defendant provided that in the event the insurer and the insureds were unable to agree as to either: (1) whether an insured was legally entitled to UIM damages; or (2) the amount of UIM damages:

> *Either party may make a written demand for arbitration.*  In this event, each party will select an arbitrator.  The two arbitrators will select a third.  If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.  [Emphasis added.]

Despite the fact that the policy stated that *either* party could demand arbitration, defendant responded to the request for arbitration on March 1, 2005, by denying the demand, stating that it never agreed to arbitrate and that *both* parties had to agree to arbitration under the policy before a UIM claim could proceed to arbitration.  The reasons for defendant's denial in the face of the policy's arbitration clause are not entirely clear from the record.

Defendant's denial of the request for arbitration prompted George and Thelma to file a complaint for declaratory relief on April 8, 2005, in which they asked the trial court to compel arbitration.  In answering the complaint, defendant "neither admit[ted] nor denie[d] the allegations" raised in the complaint concerning whether one party to its insurance contract with George and Thelma could unilaterally compel arbitration, but admitted that it had denied George and Thelma's written demand for arbitration.  However, in a September 20, 2005 response to a request for admissions, defendant admitted that the arbitration language in the policy stated that

---

[3] As noted, George and Thelma died during the pendency of the instant litigation.  According to the record, neither death was caused by injuries suffered in the motor vehicle accident that sparked this litigation.

*either* party could unilaterally demand arbitration. And in November 2005, defendant stated that it had "no objection to the matter being submitted to arbitration . . . ."

Because of defendant's initial denial that arbitration was proper, George and Thelma moved the trial court for sanctions against defendant. They claimed that any assertion by defendant that arbitration was not required under the policy was a "frivolous defense." Following a hearing on February 14, 2006, the trial court entered an order submitting the matter to arbitration, but reserved ruling on George and Thelma's request for sanctions in relation to the few-month delay prompted by defendant's initial opposition to arbitration. Before it would rule on the matter, the court expressly ordered that George and Thelma "shall supply to the Court and to counsel for Defendant its list of costs and expenses, as well as attorney fees." At the motion hearing, George and Thelma's counsel promised to provide the trial court with this information. The trial court's written order, dated March 6, 2006, retained jurisdiction to "enforce compliance and/or make any other determination, orders and/or judgments necessary to fully adjudicate the rights of the parties herein."

The parties named their respective arbitrators soon after the trial court's written order, but disagreement over the appointment of a third arbitrator brought the proceedings to a grinding halt. The chosen arbitrators could not agree to the appointment of a third arbitrator. Neither party took action on the matter for over six years, until August 13, 2012, when plaintiff moved the trial court to appoint a third arbitrator.[4] It is unclear from the record what caused this lengthy delay. During this six-year delay, George and Thelma died, leading to the appointment of plaintiff as personal representative of their respective estates.

The parties finally proceeded to arbitration in October 2013, and the arbitration panel awarded $80,000 to plaintiff for George's injuries and $33,000 for Thelma's injuries. The awards were to be "inclusive of interest, if any, as an element of damages from the date of injury to the date of suit, but not inclusive of other interest, fees, or costs that may otherwise be allowable by the Court."

On November 25, 2013, plaintiff moved the trial court for: (1) attorney fees and sanctions because of defendant's frivolous defense to arbitration; (2) penalty interest under MCL 500.2006, the Michigan Uniform Trade Practices Act (UTPA) for defendant's failure to promptly pay UIM benefits; and (3) to enter judgment against defendant on the arbitration award. The trial court denied the motion in all respects, but stated that it "affirmed" the arbitration award. With regard to penalty interest, the court found that the UTPA should not apply to a claim for UIM benefits. Further, even if the UTPA did apply, MCL 500.2006(4)'s "reasonably in dispute" language insulated defendant from having to pay penalty interest. Finally, the trial court ruled that the issue of penalty interest should have been heard before the arbitration panel.

---

[4] On appeal, defendant attempts to pin the entirety of the delay on plaintiff. However, the arbitration agreement contained in the policy provides that in the event the arbitrators selected by the parties were unable to agree on a third arbitrator within 30 days, "*either may request* that selection be made by a judge of a court having jurisdiction." (Emphasis added).

## II. SANCTIONS UNDER MCR 2.114

Plaintiff argues that the trial court should have granted sanctions against defendant under MCR 2.114 for initially asserting in its filings with the court that arbitration could not be demanded unilaterally under the insurance policy. The trial court's 2006 order reserved a ruling on attorney fees but required George and Thelma to produce evidence of their attorney fees incurred during the delay caused by defendant's initial refusal to arbitrate. Specifically, the order stated that "Plaintiff shall supply to the Court and to counsel for Defendant its list of costs and expenses, as well as attorney fees." Plaintiff never complied with that order. Indeed, even when plaintiff made a renewed request for sanctions in 2014, he never complied with the trial court's 2006 order to provide proof of his attorney fees incurred during the relevant time period. Plaintiff's failure to comply with that order, despite having years to do so, is tantamount to waiver of this issue.[5] "The usual manner of waiving a right is by acts which indicate an intention to relinquish it, *or by so neglecting and failing to act* as to induce a belief that it was the intention and purpose to waive." *The Cadle Co v Kentwood*, 285 Mich App 240, 254-255; 776 NW2d 240 (2009) (citation and quotation marks omitted; emphasis added). Where plaintiff repeatedly failed to comply with the trial court's order to provide documentation of his attorney fees for the pertinent time period, it is difficult to fault the trial court for failing to award those fees as a sanction under MCR 2.114. Indeed, plaintiff had over eight years to supply the requested fees, but never did so. See *Reed Estate v Reed*, 293 Mich App 168, 177-178; 810 NW2d 284 (2011) (waiver may be shown by a course of conduct, including neglecting and failing to act in such a manner as to induce the belief that the party failing or neglecting to act has the intent to waive). Plaintiff's failure to act and neglect of the trial court's mandate is tantamount to waiver. See *The Cadle Co*, 285 Mich App at 254-255.

Plaintiff argues that it was "impossible" for him to determine the amount of attorney fees to which he was allegedly entitled without waiting for arbitration to conclude. This ignores that the trial court, at the February 14, 2006 motion hearing, asked for the fees to which plaintiff believed he was entitled at that time. Plaintiff's counsel expressly promised to provide that figure. Plaintiff was to submit costs and fees incurred *during the time* between when defendant answered the complaint and admitted the mistake. There was never an invitation by the trial court to include in the amount of fees requested those fees incurred even after the matter went to arbitration. Any attempt by plaintiff to obtain additional fees ignored the court's order. Moreover, the argument ignores the fact that, even when arbitration was over, plaintiff still failed to provide the trial court with his requested fees.

We also note that plaintiff seeks attorney fees for defendant's conduct that occurred *before* George and Thelma filed their complaint in 2005. That is, plaintiff appears to seek sanctions under MCR 2.114 for defendant's conduct in initially denying the UIM claim. Any argument by plaintiff in this regard is without merit. MCR 2.114(A), applies to "all pleadings, motions, affidavits, and other papers provided for by" the Court Rules. Defendant's initial

---

[5] On appeal plaintiff makes no effort to comply with the 2006 order and has yet to produce evidence of his claimed attorney fees.

decision to deny arbitration was not a pleading, motion, affidavit, or other paper filed under the Court Rules. Rather, it was simply a response to plaintiff's request for arbitration. Nothing about that response brings it within the ambit of materials that could subject defendant to sanctions under MCR 2.114.

## III. PENALTY INTEREST UNDER THE UTPA

Plaintiff argues that the trial court erred by concluding that defendant was not required to pay penalty interest under the UTPA for its failure to timely pay UIM benefits. This Court reviews de novo the trial court's ruling on a motion for penalty interest pursuant to MCL 500.2006(4). *Angott v Chubb Group Ins*, 270 Mich App 465, 474-475; 717 NW2d 341 (2006). Resolution of this issue also requires examination and interpretation of MCL 500.2006(4), which is an issue of law this Court reviews de novo. *Id.* at 475.

UIM benefits are not statutorily mandated; they are an agreement for benefits voluntarily entered into between an insured and an insurer. *Dawson v Farm Bureau Mut Ins Co*, 293 Mich App 563, 568; 810 NW2d 106 (2011). The UTPA provides a mechanism to help insureds obtain payment for these and other types of benefits in a timely manner. *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 554; 741 NW2d 549 (2007). "MCL 500.2006 provides for imposition of penalty interest for the late payment of a claim[.]" *Id.* The statute provides, in pertinent part:

> (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.
>
> * * *
>
> (4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. [MCL 500.2006(1), (4).]

MCL 500.2006(4), the penalty-interest provision, draws a distinction between a claimant who is the insured or who is an individual directly entitled to benefits under an insurance contract (a first-party insured), and a claimant who is a third-party tort claimant. The first

sentence of § 2006(4) simply states that a first-party insured is entitled to penalty interest if benefits are not paid within 60 days after the insurer obtains satisfactory proof of loss. *Griswold*, 276 Mich App at 565-566. As explained by this Court in *Griswold*, "if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance, and benefits are not paid on a timely basis, the claimant is entitled to 12 percent interest, irrespective of whether the claim is reasonably in dispute." *Id.* at 566 (citation and quotation marks omitted). By comparison, the second sentence of § 2006(4), which applies to third-party tort claimants, imposes penalty interest on the insurer *only* if the claim "is not reasonably in dispute." *Id.* at 565-566. Central to plaintiff's argument on appeal is the notion that the "not reasonably in dispute" language of § 2006(4) does not apply to claims by a first-party insured. Defendant, meanwhile, likens plaintiff to a third-party tort claimant in this claim for UIM benefits, meaning that the "not reasonably in dispute" language of MCL 500.2006(4) applies.

A brief examination of the facts at issue in *Griswold* is illustrative in resolving this issue. In deciding *Griswold*, this Court convened a special panel to resolve a conflict over the application of MCL 500.2006(4) and the types of claims to which "reasonably in dispute" applied. The case involved a consolidation of three cases. See *Griswold*, 276 Mich App at 559-560. Two cases involved insureds who sought benefits from their respective insurers for water damage. *Id.* at 559-560. In the third case, the insured's building was destroyed by a fire, and the insured sought benefits from its insurer for the damage caused by the fire. *Id.* at 560. In other words, each of the three consolidated cases involved insureds seeking benefits from their own insurers for losses that were directly covered under the respective policies.

Plaintiff contends that he, as the personal representative for George and Thelma, is seeking payment of benefits that were owed directly to insureds under an insurance policy. As noted, UIM benefits arise solely from the policy. See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 194; 747 NW2d 811 (2008) (explaining that "[w]hen an insured is injured by a tortfeasor motorist whose own policy is insufficient to cover all of the insured's damages, *the insured can seek coverage from his or her UIM policy* for damages that exceed the tortfeasor's policy limits.") (emphasis added). At first glance, plaintiff's argument—that he is entitled to penalty interest because he sought benefits that were owed directly to an insured by an insurer and that the "reasonably in dispute" language of § 2006(4) does not apply—has some appeal in light of *Griswold*.

However, the instant case is not as simple as *Griswold*. As noted, *Griswold* involved a consolidation of cases in which each of the insurers was directly liable to their first-party insureds for covered losses. Here, while plaintiff is seeking UIM benefits that are provided in the policy, he is doing more than merely making a simple, first-party claim as was involved in *Griswold*. In order for plaintiff to succeed on his UIM claim, he has to essentially allege a third-party tort claim against his own insurer—or, in this case, against the insurer of George and Thelma, of whom plaintiff is the personal representative. Defendant, the insurer, stands in the shoes of the alleged tortfeasor and plaintiff seeks benefits from defendant that arose from the alleged tortfeasor's liability. See *Auto Club Ins Ass'n v Hill*, 431 Mich 449, 464-466; 430 NW2d 636 (1988) (explaining UIM coverage). See also *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005) (explaining that "[u]ninsured motorist insurance" which is substantially similar to UIM insurance, "permits an injured motorist to obtain coverage from his or her own

-6-

insurance company to the extent that a third-party claim would be permitted against the [ ] at-fault driver."). This third-party tort claim is different in nature from a typical claim for first-party benefits, as it will "often require proof of the nature and extent of the injured person's injuries, the injured person's prognosis over time, and proof that the injuries have had an adverse effect on the injured person's ability to lead his or her normal life." *Adam v Bell*, __ Mich App __; __ NW2d __ (Docket No. 319778, issued August 11, 2015) (citation and quotation omitted), slip op at 4. In addition, such a third-party tort claim is designed to compensate a claimant "for past and future pain and suffering and other economic and noneconomic losses rather than compensation for immediate expenses" that are generally associated with a first-party claim. *Id.* (citation and quotation omitted). In other words, plaintiff's UIM claim is tied to a third-party tort claim for damages that, in many respects, is "fundamentally different" than a typical first-party claim. See *id.* (citation and quotation omitted).

In *Auto-Owners Ins Co v Ferwerda Enterprises, Inc (On Remand)*, 287 Mich App 248; 797 NW2d 168 (2010), judgment vacated in part on other grounds 488 Mich 917 (2010),[6] this Court recognized that not all claims for penalty interest under MCL 500.2006(4) fit neatly into the *Griswold* analysis. In that case, the insurer sought a declaratory judgment stating that it had no duty to defend and indemnify its insureds in a third-party tort action based on an exclusion in the insurance policy. *Id.* at 252. The insureds filed a counterclaim, alleging breach of contract, estoppel, and waiver, and they requested penalty interest under MCL 500.2006(4). *Id.* The trial court found that there was coverage for the underlying third-party tort claim and awarded penalty interest under MCL 500.2006(4). *Id.* at 253-254. On appeal, the insureds defended the trial court's award of penalty interest on the ground that the insurer breached its contract by failing to pay benefits under the insurance policy. *Id.* at 258. The insureds argued that pursuant to *Griswold*, the issue of penalty interest turned only on the failure to pay benefits, and not whether those benefits were reasonably in dispute. *Id.* at 259. This Court disagreed with the insureds' argument that the case involved a simple breach of the insurance policy. Rather, in that case, "the breach of contract claim [was] specifically tied to the underlying third-party tort claim." *Id.* at 259. This scenario, reasoned the Court, was "a wholly different situation than that found" in *Griswold* and other cases that awarded penalty interest for the failure of an insurer to pay first-party claims. *Id.* at 259-260. As such, this Court held that the "reasonably in dispute" language found in the second section of MCL 500.2006(4) applied and precluded an award of penalty interest because the benefits in that case were reasonably in dispute. *Id.* at 260.

Applying *Ferwerda* in the case at bar, the trial court did not err in employing the "reasonably in dispute" language found in the second sentence of MCL 500.2006(4) and denying

---

[6] In *Ferwerda*, 287 Mich App 248, this Court decided two issues: (1) whether an award of attorney fees was appropriate; and (2) whether the imposition of penalty interest was warranted. Our Supreme Court denied leave to appeal with regard to the penalty interest issue, but remanded with regard to the attorney fee issue. *Auto-Owners Ins Co v Ferwerda Enterprises, Inc*, __ Mich __; 784 NW2d 44 (2010). Subsequently, the Court vacated this Court's ruling as to attorney fees. *Auto-Owners Ins Co v Ferwerda Enterprises, Inc*, 488 Mich 917; 789 NW2d 491 (2010). Thus, this Court's holding as to penalty interest remains good law.

penalty interest to plaintiff. This case does not involve a claim where the insured simply sought the payment of benefits due directly under an insurance policy. As in *Ferwerda*, 287 Mich App at 259, the situation in this case "is a wholly different situation than that found" in cases such as *Griswold*. Rather, the claim for benefits under UIM coverage was "specifically tied to the underlying third-party tort claim." See *id.* Indeed, in the UIM context, defendant was standing in the shoes of the alleged tortfeasor. The fact that the claim for UIM benefits was specifically tied to the underlying third-party tort claim warrants applicability of the "reasonably in dispute" language found in the second sentence of MCL 500.2006(4). See *id.* The trial court did not err in applying this standard to plaintiff's claim for penalty interest.

Moreover, contrary to plaintiff's alternative contention on appeal, the claim in this case was reasonably in dispute. Even assuming plaintiff could establish a threshold injury, plaintiff's UIM claim needed to show that the injuries suffered by George and Thelma exceeded the amount of the settlement with Smith.[7] See *McDonald*, 480 Mich at 194 (explaining UIM coverage). Given George and Thelma's respective ages, preexisting conditions, and the nature of the injuries alleged in this case, the amount of damages, if any, that they were entitled to beyond that received from Smith was a matter of reasonable dispute.[8] Thus, the trial court did not err by denying penalty interest under MCL 500.2006(4).

## IV. PREJUDGMENT INTEREST

Lastly, plaintiff seeks prejudgment interest under MCL 600.6013 from the date of the filing of the complaint until payment of the arbitration award. "MCL 600.6013 [ ] entitles a prevailing party in a civil action to prejudgment interest from the date the complaint was filed to the entry of judgment." *Beach v State Farm Mut Auto Ins Co*, 216 Mich App 612, 624; 550 NW2d 580 (1996). "The purpose of this statute is to compensate the prevailing party for loss of use of the funds awarded as a money judgment and to offset the costs of litigation." *Farmers Ins Exch v Titan Ins Co*, 251 Mich App 454, 460; 651 NW2d 428 (2002). Plaintiff seeks interest under MCL 600.6013(8), which provides:

> Except as otherwise provided in subsections (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state

---

[7] The policy's UIM coverage provision states that "We [the insurer] will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

[8] This is not to say that UIM benefits will in all cases be subject to reasonable dispute. For instance, in a scenario where an accident renders an otherwise healthy insured a quadriplegic and the tortfeasor's insurance policy provided only $20,000 in recovery, there could likely be no dispute that the insured was entitled to UIM coverage.

treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs. In an action for medical malpractice, interest under this subsection on costs or attorney fees awarded under a statute or court rule is not calculated for any period before the entry of the judgment. The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney.

Plaintiff is seeking prejudgment interest from the date of its complaint in April 2005 until the date of payment. Plaintiff never raised the issue of prejudgment interest before the trial court. In addition, it does not appear from the record that the arbitration award was ever reduced to a judgment, or that the arbitration award has been paid. Under the Michigan Arbitration Act,[9] circuit courts have jurisdiction to enforce and render judgment on an arbitration award. MCL 600.5025. Here, despite the fact that plaintiff's motion expressly sought entry of a judgment on the arbitration award, the trial court did not honor that request. Instead, the court simply "affirmed" the arbitration award, and to that extent, the trial court erred. Because it does not appear that the arbitration award was ever reduced to a judgment, and this case has not otherwise been dismissed, plaintiff remains entitled to obtain a judgment on the award. And, when seeking that judgment, because the issue of prejudgment interest was never decided, plaintiff can raise the issue of prejudgment interest at that time. As such, we decline to address the prejudgment interest issue, without prejudice to plaintiff raising it when he moves for entry of a judgment enforcing the arbitration award. Indeed, at this point, neither the arbitration panel[10] nor the trial

---

[9] Effective July 1, 2013, the Legislature repealed the Michigan Arbitration Act and replaced it with the Uniform Arbitration Act, MCL 691.1681 *et seq.* See *Fette v Peters Constr Co*, __ Mich App __; __ NW2d __ (Docket No. 320803, issued May 21, 2015), slip op at 4. The Uniform Arbitration Act "does not affect an action or proceeding commenced or right accrued before this act takes effect." MCL 691.1713. See also *Fette*, __ Mich App at __, slip op at 4. Because George and Thelma filed a complaint for arbitration in 2005, the Uniform Arbitration Act does not apply, and the Michigan Arbitration Act governs. See *id.*

[10] In this regard, we note that ordinarily, preaward, prejudgment interest would be deemed to have been submitted to the arbitration panel. See *Holloway Const Co v Oakland Co Bd of Rd Comm'rs*, 450 Mich 608, 618; 543 NW2d 923 (1996) ("The decision whether to award preaward, prejudgment interest as an element of damages is reserved as a matter of the arbitrator's discretion."). In this case, there was nothing in the arbitration agreement reserving the issue of preaward, prejudgment interest. However, the arbitration award expressly stated that the arbitration panel awarded interest as an element of damages from the time of the injury to the time the complaint was filed, but it was not deciding matters pertaining to "other interest." Prejudgment interest after the filing of the complaint fits into the broad category of "other interest." Thus, the arbitration panel expressly declined to address the prejudgment interest plaintiff is now seeking. The record contains no indication as to why the arbitration panel did not consider any "other interest," nor is there any indication that the parties objected to the arbitration panel's decision in this regard.

court has decided the issue of plaintiff's entitlement to statutory prejudgment interest under MCL 600.6013.

Lastly, on the issue of prejudgment interest, we note that defendant contends that plaintiff should not be entitled to any prejudgment interest because of his—and George and Thelma's—delays in this case. "[A] court may disallow prejudgment interest for periods of delay where the delay was not the fault of, or caused by, the debtor." *Eley v Turner*, 193 Mich App 244, 247; 483 NW2d 421 (1992). Here, however, it is not apparent that the entirety of the delays in this case can be assigned to plaintiff. With regard to the six-year delay caused by disagreement over the third arbitrator, defendant is incorrect in stating that the arbitration agreement required the insured, and only the insured, to petition the circuit court to select a third arbitrator in the event of disagreement. Rather, the agreement as contained in the policy states "*either* may request that selection" of a third mediator "be made by a judge of a court having jurisdiction." (Emphasis added). If plaintiff raises the issue of prejudgment interest at the time he seeks a judgment on the arbitration award, the delays in this case can be a consideration for the trial court, but should not at the outset deny plaintiff any claim to prejudgment interest under MCL 600.6013.

Affirmed in part and remanded to the trial court for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Jane M. Beckering

-10-