*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PF,

Petitioner-Appellant,

V

JF,

Respondent-Appellee.

FOR PUBLICATION
February 25, 2021
9:00 a.m.

No. 351461
Macomb Circuit Court
LC No. 2019-009260-PP

Before: SWARTZLE, P.J., and MARKEY and TUKEL, JJ.

MARKEY, J.

Petitioner appeals by right the circuit court's order denying her petition for a personal protection order (PPO) that she sought against respondent. The petition cited and relied on six incidents that allegedly justified the issuance of a PPO. The circuit court granted summary disposition in favor of respondent with respect to the initial five incidents, concluding that they were barred under the doctrine of res judicata because a PPO petition filed by petitioner regarding those five incidents had previously been denied by a circuit court in a neighboring county. Petitioner argues that the court erred in applying res judicata. As to the sixth incident, which occurred after the earlier PPO request had been rejected, the circuit court concluded that it did not warrant a PPO under MCL 600.2950. Petitioner contends that the circuit court erred in reaching that conclusion. We reverse and remand for further proceedings.

The parties were married in 1988 and divorced in 2012. Petitioner and respondent have eight children together, only one of whom, a teenage son, remained a minor during the proceedings. Petitioner had physical custody of their son, and the parties shared legal custody. Respondent had not been in contact with the minor child since 2014. In 2017, respondent was convicted of attempted eavesdropping on petitioner, and he was sentenced to two years' probation that prohibited contact with petitioner. But respondent was released from probation and the no-contact order in 2018.

In September 2019, petitioner filed a PPO petition against respondent in the neighboring St. Clair Circuit Court. Petitioner asserted that there were five incidents involving respondent that occurred in September 2019 and warranted the issuance of a PPO against respondent. Two of the

incidents concerned respondent's attendance at the minor child's soccer games, even though respondent did not have direct contact with petitioner or the parties' son. Additionally, there were two incidents in which respondent drove by petitioner's house after attending the child's soccer games. Respondent alleged that he merely drove by the house to reminisce and did not know whether petitioner even still lived there. The fifth incident regarded a situation where respondent contacted one of the adult children and asked her to meet with him. The parties' daughter declined the invitation and asked not to be contacted again, yet respondent subsequently sent her an e-mail. The St. Clair court did not hold a hearing and denied the PPO petition. The court stated that "petitioner has been interviewed, the petitioner's claims are sufficiently without merit, and the action should be dismissed without a hearing." The St. Clair court also reasoned that there was "no contact between the parties" and "no . . . evidence of [respondent] being a credible threat[.]"

Three days later, petitioner filed the instant PPO petition against respondent in the circuit court. Petitioner again set forth the five incidents that had been presented to the St. Clair court, along with an additional incident, all of which allegedly warranted a PPO. The additional or sixth incident took place the day after petitioner's first PPO request had been denied and involved respondent's attendance at another soccer game in which the minor child was participating. Respondent took a photograph or video with his cellphone during the sporting event. Petitioner alleged that respondent sat in front of her on the bleachers and snapped a picture of her, flipped her off, and called her a "b***h" in the parking lot. Respondent claimed that he simply took a video of the minor child playing soccer and denied taking or directing any action toward petitioner.

The circuit court denied petitioner's request for an ex parte order. At an evidentiary hearing on the PPO, petitioner argued that respondent's recent stalking conduct and his history of abusive behavior caused petitioner to suffer reasonable apprehension of violence, warranting a PPO under MCL 600.2950. Petitioner testified with respect to the six incidents and a history of physical, verbal, and sexual abuse by respondent throughout their relationship. Additionally, petitioner testified in-depth regarding an incident in 2011. According to petitioner, respondent became angry at one of their children and attempted to push the child's head under water in the kitchen sink and sprayed him with the sink's hose as petitioner and another child tried to pull respondent away. When respondent let the child go, respondent started shoving petitioner and both children into kitchen cupboards. Petitioner testified that as respondent was leaving, he picked up a bag of glass bottles and threw them at petitioner, causing them to shatter as they struck her in the head. Respondent also chased one of the children across the yard while shouting expletives. After respondent entered his vehicle, petitioner and her children went into the home and locked the doors. Respondent forgot his glasses and attempted to retrieve them from the house. But no one would unlock a door, so he proceeded to kick in a back door.

At the conclusion of petitioner's testimony, respondent moved to dismiss the case, arguing that petitioner was relying on facts asserted in her first PPO petition that had been rejected, that she was engaging in forum-shopping for a PPO, and that petitioner had not established a reasonable apprehension of violence. Respondent contended that res judicata barred the PPO action. In response, petitioner maintained that the filing of the first PPO petition did not preclude her from filing the second petition in an effort to stay safe. The circuit court denied respondent's motion. The court stated, "I feel like you're making a motion for summary disposition and I'm going to deny it at this point because it's an issue of fact and credibility as to whether or not she felt threatened reasonably or not."

Respondent then took the stand to testify. He denied taking a picture of petitioner, flipping her off, calling petitioner names, or abusing petitioner during their marriage. With regard to the 2011 incident, respondent admitted that "things were getting heated," so he attempted to leave the house. He denied both holding his child's head under water in the kitchen sink and throwing glass bottles at petitioner. Respondent admitted that he sprayed the one child with the kitchen sink hose, but this was only after the children had spit in his face and were disrespectful. Respondent also claimed that the bag of returnable bottles ripped and were thrown when petitioner attempted to grab them away from respondent. Respondent argued that a PPO was not warranted because petitioner's case was barred by res judicata, and that even to the extent that it was not barred, respondent's actions would not have caused a reasonable person to be fearful. At the end of the hearing the circuit court took the matter under advisement.

The circuit court subsequently issued a written opinion and order denying petitioner's request for a PPO. The court, referring back to respondent's motion to dismiss that was made during the evidentiary hearing, decided it anew, treating it as a motion for summary disposition under MCR 2.116(C)(7) based on res judicata. The circuit court granted the "motion for summary disposition pursuant to MCR 2.116(C)(7) under the theory of res judicata as [to] the initial five incidents contained in the [p]etition."[1] The circuit court then moved on to substantively assess whether the sixth incident, which was not barred by res judicata, supported the issuance of a PPO. The court denied the request for a PPO based solely on the sixth incident, reasoning as follows:

> [Respondent's] presence in a public place, where he did not attempt to interact with either Petitioner or the minor child, shows no indication of future harm to Petitioner. Further, although Respondent appeared within Petitioner's sight at the minor child's game on September 18, 2019 [sixth incident], both parties were in a public place from which Respondent has not been banned and he did not take any other prohibited action pursuant to MCL 750.411h which might be considered a course of conduct to satisfy the statutory standard for stalking.
>
> This Court is required to issue a personal protection order only if it determines that there is reasonable cause to believe that the Respondent may

---

[1] Technically, the court's action in revisiting the issue did not implicate summary disposition under MCR 2.116; rather, it concerned involuntary dismissal under MCR 2.504(B)(2), which provides, in pertinent part:

> In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that on the facts and the law, the plaintiff has no right to relief. [See *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995).]

Res judicata can, of course, provide a basis for dismissal under MCR 2.504(B)(2).

commit one or more of the acts listed in MCL 600.2950(1). Petitioner presented no evidence that Respondent has shown any sign of an intent to: . . . engag[e] in conduct that is prohibited under MCL 750.411h[] or any other . . . conduct that imposes upon or interferes with Petitioner's personal liberty or that causes a reasonable apprehension of violence. The Petition's allegations and the testimony offered at the hearing would not cause a fair-minded person of average intelligence to believe that Respondent could commit one of the acts prohibited by MCL 600.2950.

Petitioner now appeals by right.[2]

On appeal, petitioner first argues that the circuit court erred in granting summary disposition or involuntary dismissal on the basis of res judicata with respect to the initial five incidents referenced in the PPO petition. Petitioner additionally contends that the circuit court abused its discretion by denying her petition for a PPO in light of the compelling evidence that she presented. "An appellate court reviews de novo a trial court's ruling on a motion for an involuntary dismissal." *Adair v Michigan*, 497 Mich 89, 99; 860 NW2d 93 (2014).[3] "The question whether res judicata bars a subsequent action is reviewed de novo by this Court." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). This Court reviews for an abuse of discretion a trial court's decision regarding whether to issue a PPO. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. A court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018). Factual findings underlying a PPO ruling are reviewed for clear error. *Hayford*, 279 Mich App at 325. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v Geostar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (quotation marks and citation omitted).

"[B]y commencing an independent action to obtain relief under this section, . . . an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a . . . former spouse . . . from . . . [e]ngaging in conduct that is prohibited under section 411h . . . of the Michigan penal code." MCL 600.2950(1)(j) (referencing MCL 750.411h).

---

[2] Neither party has filed any supplemental motion or pleading with this Court nor submitted correspondence asserting that events have transpired rendering the issues on appeal moot. See *Paquin v City of St. Ignace*, 504 Mich 124, 131 n 4; 934 NW2d 650 (2019) ("No motion or other pleading has claimed mootness . . . ."). Accordingly, we shall proceed to ascertain whether the circuit court erred by failing to issue a PPO. Moreover, even if moot, we may still address an issue of public significance that is likely to recur yet evade judicial review. *People v Richmond*, 486 Mich 29, 37; 782 NW2d 187 (2010). This principle or exception is applicable under the circumstances in this case, which is part of the reason that we have opted to publish this opinion.

[3] We also review de novo a summary disposition ruling. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

MCL 750.411h addresses the crime of stalking.[4] "Stalking" is defined as a "willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411h(1)(d). And a "course of conduct" is "a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose." MCL 750.411h(1)(a). "Harassment" is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." MCL 750.411h(1)(c).

"The court shall issue a personal protection order . . . if the court determines that there is reasonable cause to believe that the individual to be restrained or enjoined may commit" the offense of stalking. MCL 600.2950(4). In determining whether reasonable cause exists, a court is required to consider documents, testimony, other proffered supporting evidence, and "[w]hether the individual to be restrained or enjoined has previously committed or threatened to commit" the crime of stalking, amongst a variety of other acts or conduct enumerated in MCL 600.2950(1)(a)-(*l*). MCL 600.2950(4)(a) and (b).

In *Adair*, 470 Mich at 121, our Supreme Court recited the factors applicable to determining whether a claim is barred by res judicata:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) *the matter in the second case was, or could have been, resolved in the first*. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the *same transaction* that the parties, exercising reasonable diligence, could have raised but did not. [Citations omitted; emphasis added.]

[T]he doctrine of res judicata is a judicially created doctrine that serves to relieve parties of the cost and aggravation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by preventing inconsistent decisions." *Adam v Bell*, 311 Mich App 528, 531; 879 NW2d 879 (2015) (citation omitted). Res judicata is not intended to lighten the loads of state courts by precluding lawsuits whenever possible; rather, the purpose of the doctrine is to promote fairness. *Id.* We will not apply res judicata "when to do so would subvert the intent of the Legislature." *Id.* at 531-532.

In this case, had petitioner sought a PPO on the basis of the same five incidents that were presented to the Macomb circuit court *and nothing more*, then the doctrine of res judicata would

---

[4] While there are numerous acts and offenses that can serve as the factual basis for a PPO, MCL 600.2950(1)(a)-(*l*), our focus is on stalking because petitioner's arguments below and on appeal primarily accuse respondent of engaging in stalking. During closing argument by petitioner's counsel, she asserted that "what he's been doing clearly has established that he's stalking."

plainly have applied and precluded petitioner from obtaining a PPO. Petitioner, however, alleged a sixth incident that had not been, and could not have been, alleged in the Macomb circuit court. And those new allegations regarding the sixth incident, in our view, opened the door for consideration of the prior five incidents *in conjunction with* the sixth incident.

The sixth incident drove petitioner to again seek the assistance of a court in an effort to obtain a PPO against respondent. And the sixth incident could not be viewed in isolation or a vacuum; rather, the pattern of conduct between and involving the parties, including the first five incidents, had to be examined in its entirety. The earlier incidents could give explanation or context to the sixth incident by providing insight on intent, continuity of purpose, the reasonableness of beliefs, and states of mind or feelings relative to terror, fright, intimidation, threats, harassment, and molestation. As indicated, stalking entails a course or pattern of conduct that involves continuing or repeated harassment arising out of separate noncontinuous acts, MCL 750.411h, thereby justifying the issuance of a PPO to halt the ongoing conduct. Stated otherwise, multiple or a series of acts are necessarily required to issue a PPO based on stalking conduct, any one of which acts can shed light on the other acts. One incident can change the dynamics and meaning of surrounding incidents.[5]

We recognize that the transactions raised in the first PPO suit overlapped with all but one of the transactions raised in the instant PPO suit. But were we to rule that res judicata precluded consideration of the first five incidents in relation to whether a PPO should be issued predicated on stalking activity, we would effectively be subverting the intent of the Legislature in enacting MCL 600.2950. See *Adam*, 311 Mich App at 531-532 (res judicata cannot be applied to subvert legislative intent). The common law, which includes the doctrine of res judicata, *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2015), governs unless it has been abrogated by a statute, *Albro v Allen*, 434 Mich 271, 286 n 6; 454 NW2d 85 (1990). Indeed, as quoted earlier, MCL 600.2950(4)(b) requires a court to take into consideration "[w]hether the individual to be restrained or enjoined *has previously committed or threatened to commit* 1 or more of the acts" enumerated in MCL 600.2950(1). (Emphasis added.) Additionally, when a PPO request is sought on the basis of stalking conduct, the stalking statute, MCL 750.411h, must be examined and it requires, as noted above, a course or pattern of conduct. MCL 600.2950 and MCL 750.411h dictate contemplation of all relevant present and past incidents arising between the parties. Moreover, the common-law doctrine of res judicata cannot be employed to undermine our Legislature's intent.[6] A circuit court needs to have the ability to examine and consider the totality

---

[5] For example, there could be three incidents between parties that outwardly appeared innocent, but then a fourth incident makes absolutely clear that the earlier incidents were not innocent and instead involved acts undertaken with a nefarious intent or purpose. Or the fourth incident, standing alone, could appear entirely innocent, but when the prior three incidents are considered in conjunction with the fourth incident, the fourth incident could be construed as entailing unlawful activity.

[6] We conclude that legislative intent is not offended by dismissing a PPO action on the basis of res judicata when the very same group of incidents or transactions were alleged in a previous PPO action. Furthermore, had the "sixth" incident in this case actually occurred before the first PPO

-6-

of the circumstances when ruling on a PPO petition. The past history of the parties is a necessary consideration when evaluating whether a PPO should be issued. We reverse and remand the case to the circuit court to again adjudicate the PPO petition, taking into consideration the five earlier incidents and any other pertinent history between the parties.

We decline to address whether the circuit court abused its discretion by denying the PPO request based solely on the sixth incident, nor will we address whether petitioner was entitled to a PPO on the basis of all six incidents and prior history. As reflected in our discussion, the sixth incident cannot be viewed in isolation—the five earlier incidents and other relevant history must also be taken into consideration. This is not how the circuit court analyzed the case, and it would not be appropriate for us to engage in the analysis or examination in the first instance.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Jonathan Tukel

---

action was filed, such that it could have been raised but was not, we would conclude that res judicata would bar the subsequent PPO action involving the six incidents.