*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN MAYBEE,[1]

Plaintiff-Appellant,

v

SHEILA BRECKENRIDGE,

Defendant-Appellee.

UNPUBLISHED
December 22, 2022

No. 357111
Oakland Circuit Court
LC No. 2020-181812-CH

Before: HOOD, P.J., and SWARTZLE and REDFORD, JJ.

PER CURIAM.

Plaintiff, Karen Maybee,[1] appeals as of right the trial court's order granting summary disposition to defendant, Sheila Breckenridge, in this quiet-title action. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involves a dispute over real property located at 599 Luther, Pontiac, Michigan 48341 (the "Luther property"). The property was owned by Robert L. Jones, who died on July 8, 2019. Jones is the father of Maybee and Breckenridge. The dispute is about whether Jones transferred the Luther Property to Breckenridge through a quitclaim deed on November 23, 2015.

On July 26, 2019, Ricky Page, who claimed to be one of Jones's heirs, filed a petition to probate Jones's will, purportedly executed in 2018, with the Oakland Probate Court.[2] The petition stated Jones's date of death and requested an order determining the identities of Jones's heirs and

---

[1] The original complaint in this matter referred to plaintiff, Karen Maybee, as Karen Smith. However, the amended complaint filed with the trial court listed her as Karen Maybee. Plaintiff's counsel stated at an April 14, 2021 hearing that plaintiff's name is Karen Maybee. While this Court is not aware of the reason for plaintiff's name change, defendant Sheila Breckenridge's brief on appeal also notes that plaintiff, Karen Maybee, is also known as Karen Smith.

[2] The prior will matter in Oakland County Probate Court was Case No. 2019-390184-DE.

that Jones died testate. Jones's purported last will and testament identified both Maybee and Breckenridge as his children. But the will bequeathed any of Jones's remaining interest in the Luther property to Maybee only.

Page, however, failed to comply with deadlines and other requirements that the Oakland Probate Court imposed. The probate court found that Page failed to exchange or file a witness list or trial brief. Following an objection to the purported will as a copy, Page failed to file an original of the will as ordered. He also failed to file a proof of service and affidavit of publication satisfying notice requirements for interested parties. On March 2, 2020, the probate court entered an order finding that the petitioner, Page, "failed to comply with the Michigan Rules of Court and [the probate court's] orders and therefore Petitioner's petition to probate the document he has proffered as [Jones's] will is dismissed under MCR 2.504(B)(1)." The probate court's order also stated that Jones's "estate remains intestate . . . ." The order was never appealed.

On August 8, 2019, a month after Jones's death, Breckenridge recorded the 2015 quitclaim deed with the Oakland County Register of Deeds. Initially, the personal representative for the estate filed a notice of lis pendens on January 23, 2020. But, the week after the probate court order dismissing the proposed will and declaring intestacy, the personal representative executed a discharge of lis pendens with regard to the Luther property. The record is silent on why the personal representative did not seek to quiet title related to the Luther property. The personal representative later moved to close the probate case because the estate did not have assets. The record is silent on what, if any, notice Maybee received related to the decision to discharge the lis pendens and the personal representative's request to close the estate.

Maybee filed a complaint to quiet title on the Luther property in June 2020.[3] In her complaint, Maybee asserted that Breckenridge had recorded a forged quitclaim deed. She requested that the trial court declare the Luther property to be an asset belonging to Maybee. Breckenridge subsequently filed an answer to Maybee's complaint to quiet title, claiming that Jones signed the quitclaim deed transferring the Luther property to her, and that the deed was properly executed, witnessed, and notarized.

Breckenridge later filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). She argued that Maybee's "claim was already litigated" and judgments had been entered in the prior will matter by the Oakland Probate Court and in another matter in the 50th District Court.[4] Breckenridge asserted that the doctrine of res judicata barred Maybee's quiet

---

[3] Maybee later filed an amended complaint. The amended complaint identified plaintiff as Karen Maybee instead of Karen Smith. The amended complaint was otherwise identical to the original complaint. Breckenridge did not file an answer to Maybee's amended complaint.

[4] While Maybee and Breckenridge reference a 50th District Court proceeding related to this matter in Breckenridge's motion for summary disposition and Maybee's response to Breckenridge's motion for summary disposition, only the order of dismissal related to that case is contained in the lower court file. Breckenridge noted in her brief in support of her motion for summary disposition that the matter in 50th District Court involved an attempt to have Breckenridge evicted from this

title claim. She also argued that Maybee had made only conclusory allegations that the quitclaim deed was a forgery. Maybee filed a response to Breckenridge's motion for summary disposition, disputing that the instant matter had been litigated in prior actions. She noted that, in the prior probate case, the probate court order only addressed who the personal representative of Jones's estate was, and the ownership of the at-issue property was never litigated.

Following a hearing, the court denied Breckenridge's motion for summary disposition pursuant to MCR 2.116(C)(8), and it concluded that Maybee's claim was validly pleaded. The court abstained from ruling on Breckenridge's motion for summary disposition pursuant to MCR 2.116(C)(10) because it reasoned that MCR 2.116(C)(7) was applicable. The court granted Breckenridge's motion for summary disposition pursuant to MCR 2.116(C)(7), reasoning that the issue of the validity of the quitclaim deed could have been litigated in the prior will matter. The trial court later entered an order granting Breckenridge's motion for summary disposition pursuant to MCR 2.116(C)(7). This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the application of a legal doctrine, such as res judicata. *Garrett v Washington*, 314 Mich App 436, 440-441; 886 NW2d 762 (2016). Summary disposition based on res judicata falls under MCR 2.116(C)(7). See *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). "When reviewing a motion under MCR 2.116(C)(7), a reviewing court must consider all affidavits, pleadings, and other documentary evidence submitted by the parties and construe the pleadings and evidence in favor of the nonmoving party." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011).

## III. LAW AND ANALYSIS

Maybee argues that the trial court erred in applying the doctrine of res judicata to grant summary disposition to Breckenridge. We agree.

Courts use the doctrine of res judicata to prevent multiple suits litigating the same cause of action. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007). It bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the claims in the second case were, or could have been, resolved in the first case. *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004). "Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties,

---

property. As other documents from that proceeding are not in the lower court file, this Court cannot consider that record on appeal. "This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Because the specifics of the prior matter in the 50th District Court were not included in the lower court file, this Court will not address the 50th District Court matter in the res judicata analysis below.

exercising reasonable diligence, could have raised but did not." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). Specifically:

> In Michigan, the doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. [*Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999) (quotation marks and citation omitted).]

"If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata." *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 11; 672 NW2d 351 (2003). Res judicata applies to issues decided through a grant of summary disposition, *Detroit v Nortown Theatre, Inc*, 116 Mich App 386, 392; 323 NW2d 411 (1982),[5] and acceptance of case evaluation awards, *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 555; 640 NW2d 256 (2002).

Here, the trial court granted summary disposition because it found that the issue of the 2015 quitclaim deed's validity could have been litigated in the probate court case. This was incorrect. Maybee could not litigate the issue in the probate court. At the threshold, we acknowledge that the first two prongs of res judicata are satisfied.

First, for res judicata to apply, the first case must have been resolved on the merits. *Adair*, 470 Mich at 121. Here, the probate case was decided on the merits. The probate court entered an order finding that Page "failed to comply with the Michigan Rules of Court and [the Oakland Probate Court's] orders and therefore Petitioner's petition to probate the document he has proffered as [Jones's] will is dismissed under MCR 2.504(B)(1)." MCR 2.504(B) provides, in part:

> (1) If a party fails to comply with these rules or a court order, upon motion by an opposing party, or sua sponte, the court may enter a default against the noncomplying party or a dismissal of the noncomplying party's action or claims.
>
> * * *
>
> (3) Unless the court otherwise specifies in its order for dismissal, a dismissal under this subrule or a dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication on the merits.

---

[5] Although *Nortown Theatre* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). The same applies to the other pre-November 1, 1990 cases of this Court referenced later in this opinion.

Accordingly—based on the plain language of MCR 2.504—the Oakland Probate Court's dismissal was an adjudication on the merits.

Second, for res judicata to apply, the suits must involve the same parties or their privies. *Adair*, 470 Mich at 122. Both Maybee and Breckenridge were parties to the probate court case. "It is well settled that the parties in interest in a proceeding to probate a will are the beneficiaries under the will and those upon whom the law would cast the property in the event the will was set aside." *Butts v Ruthven*, 292 Mich 602, 608; 291 NW 23 (1940) (quotation marks and citation omitted). In this case, Maybee was identified as an heir and was a beneficiary under Jones's purported will. Breckenridge was listed as a respondent and was a beneficiary in Jones's purported will.

They were not just parties; they were adversaries. For the purposes of res judicata, the parties must have been adversarial parties in the prior action. *Eyde v Charter Twp of Meridian*, 118 Mich App 43, 52; 324 NW2d 775 (1982). "Adverse parties have been defined as those who, by the pleadings, are arrayed on opposite sides . . . ," though this definition of adverse parties is "not restricted to the plaintiffs against defendants." *Gomber v Dutch Maid Dairy Farms, Inc*, 42 Mich App 505, 511; 202 NW2d 566 (1972). Adversarial parties must have a controversy between them at issue in the proceedings. *Id*. at 512. The parties were adversarial in the prior will matter because the parties' possible inheritance of the at-issue property was dependent on whether the will and the quitclaim deed were validated. Thus, the parties had adverse interests in the prior will matter. Accordingly, both parties in the instant case were also parties in the probate court case.

Having addressed the first two factors of res judicata, we turn to the third factor: whether the quiet title action involved claims that were, or could have been, resolved in the probate case. *Adair*, 470 Mich at 121. We conclude that the trial court erred in finding that this factor was satisfied for three reasons: (1) the quiet title action and probate case involve different transactions; (2) the probate court dismissed the will and closed the estate before Maybee could seek an order quieting title for the Luther property; and (3) applying res judicata to bar Maybee's quiet title action violates principles of fairness underpinning our res judicata jurisprudence.

It is undisputed that the validity of the 2015 quitclaim deed was not litigated.[6] But Michigan courts broadly apply res judicata to bar "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Dart*, 460 Mich at 586 (citation omitted). Put another way, res judicata applies "not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of

---

[6] While Breckenridge claims that Maybee also failed to challenge the quitclaim deed following the execution of a discharge of lis pendens in relation to the at-issue property, a notice of lis pendens does not bar claims pursuant to the doctrine of res judicata because the filing of a notice of lis pendens is not an action to be decided on the merits. Rather, a notice of lis pendens is merely a notice "designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation." *Richards v Tibaldi*, 272 Mich App 522, 536; 726 NW2d 770 (2006).

litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Pierson*, 460 Mich at 380 (quotation marks and citation omitted).

We typically use a transactional test to determine if a matter could have been resolved in the first case. See *Washington*, 478 Mich at 420. Under a transactional test, "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id*. (quotation marks and citation omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit . . . ." *Adam v Bell*, 311 Mich App 528, 533; 879 NW2d 879 (2015) (quotation marks and citation omitted; alteration in original).

In *Adam v Bell*, this Court applied the transactional test to conclude that res judicata did not bar a plaintiff's third-party no-fault action for negligence and uninsured motorists (UM) benefits, where the plaintiff previously filed and settled a first-party claim for personal protection insurance (PIP) benefits arising out of the same accident. *Adam*, 311 Mich App at 532-533. This Court reasoned that, while the plaintiff's action for PIP benefits and her UM action "both arose from the same automobile accident, the actions also have significant differences in the motivation and in the timing of asserting the claims, and they would not have formed a convenient trial unit." *Id*. at 533. Further, this Court stated that "applying res judicata to the facts of this case would not promote fairness and would be inconsistent with the Legislature's intent expressed through the no-fault act." *Id*.

Here, the quiet title action fails the transactional test. Unlike the accident in *Adam*, here, the quiet title action and prior probate case did not even arise out of the same factual transaction. The probate case began and largely ended with the question of the validity of the will, which Jones purportedly executed in July 2018. The quiet title action involves the question of the validity of a quitclaim deed purportedly executed in 2015. The two documents were not related in time. Because of the nearly three years between the execution of Jones's purported will and the quitclaim deed, the actions regarding the validity of Jones's purported will and the quitclaim deed would not have "formed a convenient trial unit." *Adam*, 311 Mich App at 533. Further, the facts and circumstances of the execution of each document are significantly different because they were notarized at different times with different witnesses. As a result, Maybee's action to quiet title to the at-issue property did not arise "from the same transaction such that plaintiff in the exercise of reasonable diligence could have raised this" claim in the prior will matter in probate court. *Id*. at 532. The cases also involve different motivations. See *id.* The probate case concluded because after the court dismissed the 2018 will, the personal representative did not pursue a quiet title claim related to the validity of the 2015 deed and informed the probate court that without the Luther property the estate had no assets. Maybee's motivations largely did not factor into the 2018 will's dismissal or the estates closure. The quiet title action involves different motivations than those at issue in the probate case.

Admittedly, the question of the validity of the deed would have affected the estate assets in the probate case. But the validity of the 2015 quitclaim deed was not actually litigated. Contrary to Breckenridge's assertions, the March 2, 2020 probate court order dismissing the proposed 2018 will did not extinguish further challenges to the validity of 2015 quitclaim deed. See *Ingle v Musgrave*, 159 Mich App 356, 363-364; 406 NW2d 492 (1987) (holding that res judicata did not

bar quiet title action following a probate case, where "probate court proceeding did not determine proper title to the lands in question inasmuch as those assets were never identified as part of [the decedent's] estate."). Likewise, the personal representative's decision to discharge the lis pendens did not address the validity of the will. A notice of lis pendens is merely a notice "designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation." *Richards v Tibaldi*, 272 Mich App 522, 536; 726 NW2d 770 (2006). Its removal reflects the personal representative's decision not to pursue the alleged fraud, not Maybee's decision, and not the probate court's.

The question of the validity of the title extends beyond the validity of any proposed will or the discharge of a lis pendens. Separate from the validity of the 2018 will, if the probate court had found that the 2015 quitclaim deed was fraudulent, Jones's estate would include the Luther property. The probate court would then distribute the property according to the terms of the 2018 will, or according to intestacy laws if the will was invalid. But the probate court never reached the issue of the validity of the 2015 quitclaim deed.

This brings us to the second reason quiet title could not have been raised in the probate case: the probate court dismissed the will and closed the estate before Maybee could raise the issue. The 2018 will was dismissed for a violation of Michigan Court Rules committed by a party other than Maybee. The probate case was closed after the personal representative stated that the estate had no assets. Accordingly, while the probate court had authority to address the issue in a matter probating a will, it did not address it in the March 2020 order dismissing the will, and no documentation in the lower court file indicates that the probate court ruled on the validity of the quitclaim deed. Maybee, despite "exercising reasonable diligence," was unable to challenge the validity of the quitclaim deed in Oakland Probate Court. *Adair*, 470 Mich at 121. Had the probate case remained open, the probate court undoubtedly would have addressed this claim. We will not now bar Maybee's claims regarding the validity of the quitclaim deed when the prior will matter was dismissed as a result of the fault of another party's noncompliance with court scheduling orders.

Finally, aside from the practical inability for Maybee to raise the issue of the validity of the deed—because the will was dismissed and the estate closed—it would be unfair to bar her claims. We note that "res judicata is intended to promote fairness, not lighten the loads of the state court by precluding suits whenever possible." *Adam*, 311 Mich App at 531 (quotation marks and citation omitted). Applying res judicata to bar Maybee's quiet title action "would not promote fairness." *Id*. The probate court dismissed the 2018 will because a third-party petitioner failed to comply with court orders and deadlines. It later closed the case because the personal representative stated that the estate did not have assets—despite possible fraud related to the 2015 quitclaim deed. To apply res judicata to bar Maybee's claims would foreclose any ability to reach the issue of the validity of the contested deed.[7]

---

[7] Such a conclusion also comes dangerously close to abrogating the circuit court's jurisdiction. In general terms, the probate court would typically have power to quiet title if it relates to the estate

We, therefore, find that the trial court erred in applying res judicata to bar Maybee's quiet title action because the claims could not have been raised in the prior probate case.[8]

## IV. CONCLUSION

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Brock A. Swartzle
/s/ James Robert Redford

---

of a decedent. See MCL 700.1303. Quiet title is an equitable action, and equity jurisdiction is in the circuit courts. See MCL 600.2932(5); *Van Etten v Mfr Nat'l Bank of Detroit*, 119 Mich App 277, 286; 326 NW2d 479 (1982). Michigan's Estates and Protected Individuals Code (EPIC), MCL 700.1101, *et seq*., grants the probate court "concurrent legal and equitable jurisdiction" in the limited circumstances described in MCL 700.1303, i.e., to determine a property right or interest "in regard to an estate of a decedent, protected individual, ward, or trust[.]" MCL 700.1303; see also *In re Rudell Estate*, 286 Mich App 391, 393 n 1; 780 NW2d 884, 886 (2009). This jurisdiction is concurrent, not exclusive. See *Rudell Estate*, 286 Mich App at 393 n 1. Barring Maybee's quiet title action would effectively make the probate court the exclusive venue for an equitable claim that is otherwise within the circuit court's jurisdiction.

[8] Maybee also argues that the trial court's order granting summary disposition was premature, and it is clear that evidence can be discovered that further develops Maybee's claim that the at-issue quitclaim deed is a forgery and should be voided. Because the trial court did not rule on Breckenridge's motion for summary disposition pursuant to MCR 2.116(C)(10), we decline to address Maybee's arguments regarding those grounds as the trial court has not previously ruled on that portion of Breckenridge's motion.